## SARAH FARGO

*v.*

## FRANCIS GOODSPEED, Exr.

CONTRACT—*procured by fraud and collusion.* Where a husband, by fraud, collusion and artifice on his part, and others assisting him, procured a conveyance of his wife's property to one of his confederates, and the execution of an agreement in relation thereto, and for other purposes, with the intention of discarding her and possessing himself of her property, it was *held,* that a court of equity would not assist him in enforcing the agreement, or obviating a defect in his title caused by the mutilation of the deed he had thus obtained.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. BARBER, RANDALL & FULLER, and Mr. HENRY LOGAN, for the appellant.

Mr. F. GOODSPEED, Mr. H. SNAPP, and Messrs. GARNSEY & KNOX, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from a decree of the circuit court of Will county, in a cause therein pending and determined, in which Orange T. Fargo was complainant and Sarah Fargo defendant, the scope of the bill being, to enforce an agreement of the parties, made October 25, 1870, and charging defendant with feloniously abstracting a certain quitclaim deed provided for in that agreement, and so mutilating the same as to destroy its effect as a muniment of title, and to restrain defendant from selling or incumbering the land and premises described in it, or complicate the title in any way, which, it was alleged, defendant threatened to do, praying an injunction against all such acts, and for general relief.

The cause was duly submitted for hearing on bill, answer, replication, and cross-bill and proofs, and the findings of the court were, on the principal points, in favor of complainant. From the decree both parties prayed an appeal, which was perfected by defendant only. Since this time, the complainant has departed this life, and the matters are contested by his personal representative, Francis Goodspeed, duly admitted to defend.

It is unnecessary to state at length the various findings of the court; it is sufficient, for the purpose of this appeal, to consider one and the most material finding on which this case must be determined, and that is, the validity of the agreement made between complainant, Orange T. Fargo, and his wife, Sarah Fargo, on October 25, 1870. The court found that agreement valid and binding, and visited the effects and consequences of that agreement upon appellant, Mrs. Fargo. We think there was error in this, and it is fundamental, and if invalid, all subsequent proceedings growing thereout are of no validity. We think it is difficult to read that agreement without coming to the conclusion that it was inspired by a man tired of his wife, and anxious to relieve himself from the ties by which he was bound to her, and at the same time possess himself of her property, and that his instruments in

effecting his purpose were her cousins, Herman and Edgar Haaf.

The recitals of the agreement are to the effect that unpleasant differences had arisen between the parties, which had become so serious as to threaten a suit for a divorce; that they had four children, and numerous friends, all of whom the parties were anxious to save both pain and disgrace, and unpleasant feelings. It is not stated who or what was the cause of these differences, nor which party threatened a suit for divorce. The inference is a fair one that the complainant was that party. In fact, there can hardly be any other inference, from what follows these recitals. The very first stipulation in the agreement is, that O. T. Fargo, the complainant, may sue for a divorce if he chooses to do so, and is to take the chances for a decree upon the result thereof; and from the following: Sarah's residence is to be henceforth in Chicago, to which place Orange T. is to send her furniture, bed and bedding, clothes, sewing machine, etc., furnish her support and pin-money during pendency of proceedings.

Among the recitals preceding the stipulations is this clause: And whereas, there is considerable property in his (O. T. Fargo's) name which she claims to have come from her father's estate, and on which there are divers mortgages,—to secure this property to O. T. Fargo, it was stipulated that a quit-claim deed of all the real estate of the parties should be made to Edgar A. Haaf, in order to pass the title, if it became necessary to effect a sale of the premises, to any *bona fide* purchaser, and H. H. Haaf to hold the deed, and, in case of sale, the proceeds, for the performance of the following conditions:

"That, in case he shall obtain a decree of divorce from his said wife, the decree shall also provide for payment to said Sarah of the sum of five hundred dollars yearly, during each and every year of her natural life, payable, always, in quarterly installments of one hundred and twenty-five dollars each, at the State Savings Institution, on LaSalle street, or its successor—the first installment to be paid within ten days

after decree is obtained; and the said O. T. Fargo is to fully assume and pay said mortgages now on said property, and he takes and owns the same subject thereto; and the above payments are to be in full discharge of, and in lieu of, all claims for support, or alimony, or claims upon said O. T. Fargo, or on his property, or on her father's estate now in his name or in his possession; and it is expressly agreed and provided that, in case said O. T. Fargo shall attempt to evade the payment of any decree so obtained for the above purpose, then he shall, for each attempt, forfeit and pay twice the amount thereof as a penalty; and said Sarah may sue and recover the same, and said property (if then owned by him, or, if sold, any other property he may own,) shall be held as liable for the full performance, on his part, of this decree, and both parties pledge themselves to make as little noise or gossip as may be consistent with legal measures in the premises. The property referred to is understood to mean the farm in Troy, (three hundred and eighty acres, including wood lot,) and house and lot in Joliet."

The subdued and humiliated wife forthwith took up her residence in Chicago, and soon after, on November 14, 1870, complainant, in the circuit court of Cook county, commenced proceedings for a divorce, which he readily obtained.

The abstract does not show there was any service of process or other notice to appellant of the pendency of this suit, nor what witnesses were examined, or who proved adultery, or any other fact in the case. It is sufficient to state, complainant obtained a decree to meet the exigencies of his case, and had inserted in it a permission to the parties to seek other partners. The custody of the children was committed to complainant, and leave granted the mother to visit them, on certain terms. Alimony was decreed in lieu of all interest the wife had in the property, and to her was decreed certain specified articles of personal property.

The decree appears to be by the written consent of the parties, for at the foot of the draft of the decree is to be found

this writing, signed by the parties: "And the parties hereto assent to the above as a decree, so far as the payment of money is concerned, and as regards all questions of property or claims therefor upon each other." Signed Dec. 16, 1870.

That these proceedings were carried on by the husband, and for the purpose, among others, of getting control of his wife's property, is very apparent, and against one who was ignorant of her rights, and easily influenced to act in obedience to a superior intellect. It would appear, the residence of Fargo was in Joliet, in the county of Will, yet we find proceedings for a divorce commenced by him in the county of Cook, whilst the statute expressly provides such proceedings shall be had in the county where the complainant resides. This decree can not now be disturbed, but a court of equity can look into the agreement when that is sought to be enforced.

We have said, H. H. and Edgar A. Haaf were the instruments by which complainant operated upon appellant, and that they were, is shown from the fact that, on making the quitclaim deed and its delivery to H. H. Haaf, he put it in the possession of complainant, and Edgar A., instead of acting under it, according to the agreement, actually conveyed the property to complainant, thereby placing the legal title in him, to the entire exclusion of appellant, and in total disregard of her rights. That appellant did wrong in obtaining possession of this deed and mutilating it as charged, must be conceded, but for all that she is entitled to have justice dealt out to her, in view of the whole transaction and the circumstances attending the case.

Appellant denies, in her answer, that she was informed of the contents of this agreement and deed, and we are inclined to the opinion the whole thing was a contrivance by her husband, aided by her cousin E. A. Haaf, to place the control of these lands, left by her father, in her husband. Appellant owned one-half of the three hundred acre tract in her own right, as one of the two heirs at law of her deceased father, and there is proof going to show she became the owner of the

other half by a conveyance from her brother and her mother, to whom she relinquished her interest in other portions of her deceased father's property, of the value of four or five thousand dollars, in exchange therefor. Having, at that time, confidence in her husband, she permitted the deed for their half or portion of this three hundred acre tract to be made to him.

The annual rental value of this tract of land is proved to be worth nine or ten hundred dollars, and was appellant's property. How to get the property out of his wife, was the problem for the husband to solve, and the mode adopted is found in this agreement of October 25, 1870, the quitclaim deed to E. A. Haaf, the divorce proceedings immediately consequent thereon, and the conveyance by Haaf, in violation of the agreement, of the entire title to her husband.

But, it is said, appellant is made secure in the annual receipt of five hundred dollars, so long as she may live. It is a mistake to say she is thus secured. The decree, it is true, declares it to be a lien on the premises, but the premises are her own property, as we have seen. But if it has become the property of Haaf by this quitclaim deed, how can it be a security, when a sale of the property is provided for to pay off existing incumbrances, and the surplus to be placed in the hands of H. H. Haaf, he to hold the same as security for the payment of this five hundred dollars annually? But who is to hold him, Haaf? Who is responsible for his safe keeping of the money and its faithful application? Suppose he should squander it, what then? Such a decree as this should not have been passed, for whilst the interests of appellant called for the protection of the court, it was the duty of the court to see that, in no reasonable event or ordinary mishap, she could be made to lose her all. Her rights and interests should have been hedged in and protected by the most liberal exercise of the power of the court, and it would have been but a moderate exercise to require ample security from the trustee. This has not been done, and failing in this, the decree ought not to stand.

On the whole case, inspecting the whole record carefully, and considering all the circumstances, we are satisfied appellant is the victim of collusion, and of a wicked contrivance of her husband to get possession of her property, and then, by the aid of a court, discard her. He has accomplished the latter purpose. In the accomplishment of the former he must fail, as we see nothing in this record giving him a just claim to her property.

The decree is reversed and the cause remanded.

*Decree reversed.*