SARAH PINNEO

*v.*

FRANCIS GOODSPEED *et al.*

*Filed at Ottawa May 12, 1887.*

1. RES JUDICATA—*effect of a judgment of reversal, as to a master's report.* A master's account of the rents and profits fixed the rents, etc., at three dollars per acre, and a decree was entered approving the same, and, among other provisions, striking a cross-bill from the files. The Supreme Court reversed that decree, chiefly on the ground of the striking out of the cross-bill, holding that one of the parties was not bound by the master's statement of the account, and that such account was not sufficiently specific, and the opinion stated, that "so much of the decree, therefore, as directs a dismissal of the supplemental cross-bill, and approves of the report of the master," etc., is reversed, etc.: *Held,* that there was no confirmation of the master's report by the judgment of this court, and that the former finding of the master as to the rents to be charged, went for naught, and did not become *res judicata.*

2. MORTGAGEE IN POSSESSION—*liability to account.* A mortgagee in possession of the mortgaged premises is only required to account for the actual receipts therefrom, less such sums as he may have paid out for taxes and necessary repairs, unless it is shown that more might have been realized by reasonable diligence.

3. ADMINISTRATION OF ESTATES—*diversion of rents and profits by executors, through mistake—protection to the executors in respect thereto.* A divorced wife had a decree for the payment of $500 to her, annually, as alimony, and this was supposed to be a lien on three hundred acres of land, which had been decreed to belong to her husband. After his death, his executors, from the rents and profits of the land, paid the wife $1125, which was receipted for as on her alimony. The decree finding the husband to be the owner of the land, was reversed, and the land found to belong to the wife, and the executors were decreed to account to her for the rents and profits: *Held*, proper, in taking the account, to charge the divorced wife with the amount of such payment against the rents and profits received from the land, such payment having been made on account of alimony, under a mistake of fact in respect to the actual ownership of the land.

4. The executors of an estate, in good faith, under the mistaken belief that certain land belonged to the estate, paid $34 from the rents for the insurance of the property; but the court afterward decided that the property belonged to another, who filed a cross-bill, seeking an account of the rents and profits. The executors were in the management of the property when the insurance was made, and nothing appeared to rebut the inference that in case of a loss the insurance money would have been payable to the owner: *Held*, that in adjusting the account the executors were properly allowed for the insurance money so paid.

5. SAME—*payment by executors, out of funds not properly assets, upon claims of a certain class—rights of other creditors of the same class.* Where executors, under a mistaken belief that certain moneys coming to their hands are assets of the estate, pay a portion of the seventh class creditors a dividend on the amount of their claims, when it turns out that such moneys are not assets, and there is nothing left to pay any of the seventh class claims, a court of equity will not require the executors to pay the same *pro rata* share on the claims of the other seventh class creditors. Equality will be enforced only where it may be consistent with equity.

6. SAME—*executor buying in claims at a discount—of a proper adjustment.* A husband gave his promissory note for $2000, and, together with his wife, mortgaged her lands for its payment. After a divorce between the parties, and the subsequent marriage of the husband, he died, having appointed his second wife and another person the executors of his will. The second wife purchased the note and mortgage for $2800, there being due on the same $2944.95. It appeared that there was no profit derived by the executrix in the transaction, but a loss was incurred, rather: *Held*, in a suit involving a settlement of the estate, no error in not making such executrix account for the $144.95 discount, and in decreeing to her the amount due on the note according to its face.

7. INSURANCE—*to whom payable—in case it is made payable to wife of the assured.* Where a person procures a policy of insurance upon his life, payable to his wife, she will take all the benefit of the same, to the ex-

clusion of creditors of her husband's estate; and the fact that he may have given the same to her by will, will not change the rule.

8. EVIDENCE—*sworn answers in chancery.* Sworn answers to a bill in chancery will be regarded as evidence for the parties making the same, only so far as they are material and responsive to the bill. Immaterial matters therein will be disregarded.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. R. E. BARBER, for the appellant:

The executors were trustees under the will, and as such they were not at liberty to deal in the matters or things with which they were charged, to their personal advantage and profit. *Nelson* v. *Hayner*, 66 Ill. 487; *Ogden* v. *Larrabee*, 57 id. 391; *Thorp* v. *McCullum*, 1 Gilm. 614; *Railroad Co.* v. *Trust Co.* 49 Ill. 333; *Davone* v. *Fanning*, 2 Johns. Ch. 252.

They were trustees to pay the note and mortgage, and not to purchase the same for their own advantage. *Phelps* v. *Reeder*, 39 Ill. 173.

Orange T. Fargo devised the policy of insurance to his wife, and it must be subject to his debts.

There is no contingency in the decree of $500 yearly alimony upon the life of Orange. It is to her "during her natural life." There was no misunderstanding as to the objects of the $1125 payments by the executors, and the vouchers which she gave therefor.

The decree granting the divorce and awarding alimony has never been reversed. *Pinneo* v. *Goodspeed*, 104 Ill. 198.

Appellant was entitled to have the forty per cent dividend paid on the mortgage claim.

The decree of the circuit court was reversed on three grounds: The dismissal of the supplemental cross-bill, approving the master's report, and directing the payment of the accumulated rents and profits to Knox. In all other

respects the decree was affirmed. One part of the decree affirmed was the finding of the value of the rents and profits to be three dollars per acre per annum.

The court erred in charging Mrs. Pinneo with the insurance money paid by the executors.

Messrs. GARNSEY & KNOX, for the appellees:

The opinion of the Supreme Court must be read in connection with the pleadings as they stood at the time of the hearing. *Griggs* v. *Gear*, 3 Gilm. 63; *Binkert* v. *Railway Co.* 98 Ill. 213; *Pinneo* v. *Goodspeed,* 104 id. 194; *Marvin* v. *Collins*, 98 id. 517.

The doctrine of *res judicata*, here invoked, does not at all apply. A judgment is conclusive upon the parties to it only in respect to the grounds covered by it, and the law and facts necessary to uphold it. Bigelow on Estoppel, 22; *Davis* v. *Kennedy*, 105 Ill. 306.

Even where there is a judgment between the same parties, (not the case here,) the facts may be again litigated for any purpose, provided the immediate subject of the decision is not attempted to be called in question. *Bans* v. *Jackson*, 1 Y. & C. 585.

A judgment, to be binding, must be about the same subject matter, as well as between the same parties. *Williams* v. *Walker*, 62 Ill. 518; *Miller* v. *McManus*, 57 id. 128; *Jessup* v. *Jessup*, 102 id. 486; *Kingsbury* v. *Buckner*, 70 id. 514.

To determine the question, the pleadings must be looked to in order to see whether the matters insisted on as *res judicata* could have been inquired into. *Bentley* v. *O'Bryan*, 111 Ill. 60.

The appellees were only chargeable with the amount of rent actually received, they acting in good faith, and with reasonable prudence and diligence. *McConnel* v. *Holobush*, 11 Ill. 61; *Mosier* v. *Norton*, 83 id. 519; *Clark* v. *Finlon*, 90 id. 245.

The credit to the executors of $1125, paid by them to Mrs. Pinneo, was proper. If it was alimony, it ceased on her husband's death. Bishop on Marriage and Divorce, (4th ed.) sec. 428; *Lockridge* v. *Lockridge*, 3 Dana, 28; *Lenahan* v. *O'Keefe*, 107 Ill. 620; *Gaines* v. *Gaines' Exr.* 9 B. Mon. 429; *O'Hagan* v. *O'Hagan*, 4 Clarke, 509.

If it was a payment under Fargo's will, the fund out of which it was to be paid, by the terms of the will, was destroyed by the case of *Pinneo* v. *Goodspeed*, 104 Ill. 189.

The full amount of the mortgage must be paid by somebody. The purchase by Mrs. Fargo, with her own funds, subrogated her to Mrs. Haff's (the mortgagee's) rights, (*King* v. *Cushman*, 41 Ill. 38, *O'Halloran* v. *Fitzgerald*, 71 id. 58, *Stinson* v. *Anderson*, 96 id. 73,) and to collect ten per cent interest on it to the date of foreclosure. *Condict* v. *Flower*, 106 Ill. 117.

Having actually no funds to pay with, the executors are not obliged to pay anything on this mortgage, even if they did, by mistake, make a dividend on claims of the seventh class in Fargo's estate. *Brandon* v. *Brown*, 106 Ill. 519.

The money derived from the policy of insurance was Mrs. Fargo's, constituted no part of the estate, and the disposition of it by Fargo, in his will, made no difference, nor did it constitute it a part of his estate. *Pingree* v. *Jones*, 80 Ill. 177.

The executors are entitled to compensation and allowances for disbursements and advances made in the course of settling an estate, and in conducting this litigation. *Pingree* v. *Jones*, 80 Ill. 177; Williams on Executors, *1860; *Hayley* v. *James*, 16 Wend. 61.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is the same case which is reported in 87 Ill. 290, and again in 104 Ill. 184, the opinions wherein are referred to for a full statement of the facts. Present allusion to some of

them may be necessary in order to any proper understanding of this opinion.

In 1866, Horace Haff died intestate, seized in fee of a certain three hundred acres of land, and other real estate, leaving him surviving, Sarah Ann Haff, his widow, and Sarah Fargo, wife of Orange T. Fargo, and Edwin G. Haff, his only children and heirs-at-law. On January 23, 1868, said widow and heirs-at-law of Horace Haff made adjustment of dower and partition of his estate, by deeds duly executed. This three hundred acres was taken by Sarah Fargo as her share of inherited real estate, and, by consent, the deeds for their interest therein were made by Edwin G. Haff and Sarah Ann Haff to Orange T. Fargo. At the same time, Orange T. Fargo made his note for $2000, payable to Sarah Ann Haff, in two years, with interest at ten per cent per annum, to satisfy her dower, and Orange T. Fargo, and Sarah Fargo, his wife, gave their mortgage on the land to Sarah Ann Haff, to secure the payment of the note. Afterwards, a decree of divorce was obtained by Orange T. Fargo from his wife, under and in pursuance of which he was to pay her, for alimony, $500 annually, payable quarter-yearly, during her life, and a deed was executed vesting the entire title of said three hundred acres in him. Soon after, Sarah Fargo, conceiving that a fraud had been practiced upon her, went to the house of Orange T., and took possession of this deed, and carried it away. Thereupon, Orange T. Fargo, on January 7, 1871, filed the original bill in this cause, against Sarah Fargo, to compel her to restore said deed to him, and to prevent her from conveying or incumbering the title. The circuit court decreed in his favor, and that decree was reversed in 87 Ill. 290. The cause was remanded to the circuit court, and prosecuted to another decree therein, of date March 10, 1881, from which said Sarah, then re-married to John B. Pinneo, appealed to this court, and the decree was reversed, the opinion being that in 104 Ill. 184. One of the errors there was the dismissal of the sup-

plemental cross-bill of appellants. On the cause coming back to the circuit court, the supplemental cross-bill was eliminated and amended in accordance with the suggestions of this court, and was re-filed February 12, 1884.

The amended supplemental cross-bill alleges, that Orange T. Fargo, November 3, 1874, died possessed of the three hundred acres of land in question, holding it as tenant by the curtesy, at the time of his death, subject to the reversionary interest of his former wife, now Sarah Pinneo; that he gave directions in his will, as shown by the record; that the executor and executrix of the will, Francis Goodspeed and Elizabeth M. Fargo, administered the estate under the will, rented the said land, and received the rents from the time of Fargo's death; that the account of rents ought to be taken according to the former opinion of this court; that a large amount of other property, real and personal, belonged to said estate; refers to the proceedings of the county court for a partition of such personal estate received. It alleges that Elizabeth M. Fargo purchased the $2000 mortgage given by Fargo and appellant Sarah Pinneo, in his lifetime, to Sarah Ann Haff, for the extinguishment of her dower, with money belonging to the estate, and that she ought to satisfy it; that in violation of her duty as executrix, she purchased it, and ought not to be allowed to profit by it, and interest should stop from the day of purchase; that Augustus M. Knox had purchased it for her, held it as her trustee, and had brought suit to foreclose the mortgage, and had obtained judgment in said court, and that case ought to be consolidated with this, and he be perpetually enjoined from foreclosing the mortgage; that a large amount was due complainant, on her alimony decree, in the Cook county circuit court, and the executor should have paid her the ratable proportion of Fargo's estate; and then follows prayer for full, true and particular answer upon defendants' several corporal oaths to each allegation, with several interrogatories in regard to the amount of rents

on said three hundred acres received, and this one: "Do not the whole amount of rents of said farm (three hundred acres) received, amount to the sum of $3975.35, and were not the rents of the farm received as the property of the estate, and does he, Goodspeed, not still hold them as assets? Why were other debts paid in preference to the mortgage? On what account was the $1125 paid by said Goodspeed to orator?" (This was on her alimony.)

The answer of Goodspeed, under oath, completely and specifically answers as to all the charges and interrogatories. Elizabeth M. Fargo, and Knox, also answered under oath. Replications were filed, and the cause was then referred to the master to state an account. The master made report, and a decree was accordingly rendered, ordering the executors to pay said Knox, or to Elizabeth M. Fargo, $1629.07, to be applied on her decree of foreclosure on the three hundred acre tract, of date December 7, 1880; that complainant in the cross-bill, Sarah Pinneo, pay to the same parties $2445.38, with six per cent interest from December 7, 1886, in thirty days; that in default, the master sell the three hundred acres, or so much as necessary, to pay the last mentioned sum,—the balance due on the decree of December 7, 1880. On appeal to the Appellate Court for the Second District, the decree was affirmed, and an appeal taken to this court.

One ground upon which the reversal of the decree is asked, is for not allowing rents on the three hundred acres of land at the same rate allowed by the former master's report, upon which the decree last before this court was based, namely, at three dollars per acre per annum, instead of on the basis of the actual receipts, as was done by the master at this hearing. It is claimed our decision affirmed the former decree in this respect, and so making it *res judicata;* that three dollars per acre was the value of the rents, and that the executors were chargeable therewith. We think this a mistaken view of that decision. The chief ground for reversal of the former decree

was in striking the supplemental cross-bill, in which Knox was made a party, from the files.    It was said in the opinion: "Most of these complications and changes of interest occurred after the filing of the original and the cross-bill, and we are of opinion it was proper to bring all the parties interested in the statement of the account, before the court, and this could only be done by supplemental bill," and it was said Knox "was not bound by the statement of the account or any of the proceedings." And again, that "the statement of the account by the master is not sufficiently specific or comprehensive, nor does it seem to have been prepared with reference to the legal rights of the parties to be affected by it." And in the concluding portion, that "so much of the decree, therefore, as directs a dismissal of the supplemental cross-bill, and approves of the report of the master, and directs the accumulated rents and profits of the premises to be paid to Knox, is reversed, but is in all other respects, except so far as it may be modified by what we have already said, affirmed, and the cause is remanded with directions to the court below to refer the cause again to the master, for the purpose of restating the account, and for other proceedings in conformity with the views here expressed." It thus plainly appears that there was no confirmation, by this court, of the former master's report; that the decree of the circuit court, so far as it approved that report, was reversed, and that the cause was remanded with directions to the court below to refer the cause again to the master, for the purpose of restating the account. The finding of the former master's report then went for naught, the matter of the account was set at large, and the account was to be restated as if there had been no former one stated. It was said in that former opinion:    "The mortgage having been assigned to Goodspeed, for the use of Mrs. Fargo, on the 14th of April, 1875, she should, from thence until the appointment of a receiver, be treated as mortgagee in possession, and should account for the rents and profits accord-

ingly." The rule in such case is, as was stated in *Clark* v. *Finlon*, 90 Ill. 249, that a mortgagee in possession is only required to account for actual receipts, less such sums as he may have paid out for taxes and necessary repairs, unless it is shown that more could have been realized by reasonable diligence. And see *McConnel* v. *Holobush*, 11 Ill. 61; *Mosier* v. *Norton*, 83 id. 519. The master's report and decree now before us went upon that rule, and we regard them in this respect as correct.

Error is assigned in charging appellant Mrs. Pinneo, in the account, against rents received, $1125, which had been receipted for by her as payment on her alimony decree of $500 per annum, and in not crediting the mortgage note with a forty per cent dividend, as other seventh class claims were credited. It is true, the sums composing this amount of $1125 were paid upon the alimony decree, and specifically receipted for as so paid; and it is equally true that they were so paid under a mistake of fact, and that Mrs. Pinneo was not entitled to have them so paid. The payments were made upon the understanding that the three hundred acres belonged to the estate of Fargo. It had been so determined by a decree of the circuit court on his original bill herein. Fargo's will provided, that if the appellant Sarah Fargo lived, the three hundred acres in question could not be sold, and the quarterly installments to her could be paid from the rents of said land; but if she should die, then the said land might be sold, at the option of the executors of the will, as in their judgment should seem best. The proceeds of the sale of this land, and all of such other property as the testator should die possessed of, was to be divided equally among his four children, or as many of them as should be living.. The executors, in execution of the will, and upon the faith of the decree of the circuit court, which had adjudged the land to belong to Orange T. Fargo, proceeded upon the assumption that the land was his, and went on paying out, from the rents

thereof, the installments of the alimony decree as they became due, until this court reversed the decree of the circuit court, and decided that Mrs. Fargo was rightfully entitled to the three hundred acres in question. In March, 1876, the executors, upon the supposition that these rents from the three hundred acres belonged to the estate, obtained an order from the county court to pay a dividend of forty per cent on the seventh class claims against the estate, and made such payments on certain of them, to the amount of $1389.07, which was approved by the county court; but no portion was paid on the alimony decree, other than the $1125, and none on the mortgage debt. With these rents as assets, the executors were able to make that dividend on seventh class claims from the assets of the estate. Without the rents there were no funds of the estate applicable to the payment of any claims in the seventh class, but they would all be absorbed in the payment of claims in the prior classes, which had precedence to the seventh class claims. It turned out, then, when this court decided the three hundred acres in question to belong to Sarah Fargo, now Pinneo, that all payments on seventh class claims had been made without right on the part of the owners to have them paid, and that they should refund such payments to the executors. The payments which had been made to Mrs. Fargo on the alimony decree were made on a seventh class claim. She was not entitled to receive them, and she is made to refund them, as she should do, by applying the alimony payments to the rents. The rents from the three hundred acres, under the decision of this court, all belonged to her, and she gets all of them under the decree. She is not entitled to have anything more from the assets of the estate. Because the executors, under mistake, made payments on the alimony decree when Mrs. Fargo was not entitled to have them made, equity will not hold the executors to such mistake, but will relieve against it, so far as may be done.

As some of the creditors of the seventh class have been paid a dividend of forty per cent on their claims, it is insisted that equity should be observed, and that requires that appellant Pinneo should likewise be paid the same dividend on her seventh class claim, and that the same dividend should be paid on the mortgage note, which is in the same seventh class. Equality is to be enforced only where it may be consistently with equity. Because others have, under mistake, been paid a dividend on their seventh class claims which they were not, in right, entitled to receive, it is not equitable, and the principle of equity does not require, that appellant also should have payment of a dividend made to her on her seventh class claim which she is not entitled to receive, or that any other seventh class creditor should have the dividend paid on his claim. We see no error in charging this $1125 against rents, or in not crediting the mortgage note with a forty per cent dividend.

The executrix, Elizabeth M. Fargo, on April 15, 1875, purchased the note given by Orange T. Fargo to Sarah Ann Haff, and the mortgage given by the former and Sarah Fargo, now Pinneo, to secure its payment, for $2800, there being then $2944.95 due and unpaid on the note, the purchaser thus getting an abatement of $144.95 from the face of the note. It is insisted by appellant Pinneo, this abatement should have been allowed her from her mortgage; that the executrix, in the fiduciary relation she occupied, could not make for herself any profit out of the property. The purchase was made by the executrix with her own individual money; there were no assets of the estate from which anything could be paid upon the mortgage. We do not see that there was any profit made by the executrix in the transaction of the purchase of the note and mortgage, but loss, rather. In the purchase, there was $800 paid for accrued interest. There was upon this sum the loss of any interest up to the time of the master's report, for ten years, which would much more than over-

balance the amount of the discount made upon the purchase. We fail to perceive wherein it was in any way inequitable to decree for the amount which was due upon the note, according to its tenor.

It is claimed there was error in allowing $34 insurance money. This money was paid for insurance on the property, from the rents, by the executors, who were in the management of the property. It was paid for the benefit of the property, and nothing appears in the case to rebut the inference that in case of a loss the insurance money would have been payable to the owner of the property. We can not say this item was erroneously allowed. Orange T. Fargo, in his lifetime, procured a policy of insurance upon his life, of $5000, payable to his then wife, Elizabeth M. Fargo, upon which, after his death, she received from the insurance company the sum of $4956.91. Error is claimed in not finding that the proceeds of said life insurance policy were assets of the estate of Orange T. Fargo. Mrs. Fargo states in her answer, that with the exception of two or three she paid the premiums on said policy of insurance from her own means. But, irrespective of that, the policy evidently belonged to the wife, and she was entitled to all the benefit from it. (*Pingree* v. *Jones*, 80 Ill. 177.) The fact of Fargo giving the policy to his wife by his will, is remarked upon as showing that the policy belonged to him. That might be evidence of how he considered it, but manifestly could have no effect to change the contract, which was evinced by the policy itself, or to determine in whom was the right to its benefit.

Complaint is made in respect of exceptions to answers, in the disallowance thereof, and refusal of leave to file exceptions. From the nature of the exceptions, we are unable to perceive any harm which could have resulted to appellants from the court's ruling in that regard. There was no lack of fullness in the answers, but the objection was the reverse, that the answers were too full,—that they contained imma-

terial matter, and were not responsive to the bill. Whether so or not, the court would regard them as evidence only so far as they were material and responsive to the bill. There was enough of them which was responsive to the bill, to sustain the decree.

Exceptions were taken to the master's report, that it was not stated in accord with the directions of this court in that regard, nor in conformity with the directions of the circuit court, and error is alleged in not sustaining these exceptions. We find no error in this respect.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*