·(79 Misc. Rep. 271.)

# DOMINICK v. STERN.

(Supreme Court, Special Term, Erie County.  January 8, 1912.)

:1. INSURANCE (§ 590*)—RIGHT OF PROCEEDS—RIGHTS OF CREDITORS.

Domestic Relations Law (Consol. Laws 1909, c. 14) § 52, authorizes a wife to insure her husband's life, and provides that, if she survives the period or term of insurance, she shall be entitled to the insurance money as her separate property, free from claims of creditors, except that, where the annual premium paid from the husband's property exceeds $500, that portion of the insurance money purchased by the excess of the premium above $500 is primarily liable for the husband's debts.  Insurance Law (Consol. Laws 1909, c. 28) § 212, concerning life insurance corporations upon the co-operative or assessment plan, and section 238, relative to fraternal beneficiary societies, orders, or associations, provide that the benefits paid or to be paid shall be exempt from seizure on legal ·or equitable process for debts of the member.  *Held* that, in determining whether the amount of annual premium exceeds $500, within the meaning of Domestic Relations Law, § 52, assessments paid to fraternal benefit ·societies, or benefit or assessment associations, should not be considered, ·especially as the provision of the Domestic Relations Law was first enact-·ed in 1840 (Laws 1840, c. 80), while the exemptions of the Insurance Law were not enacted until 1883 (Laws 1883, c. 175), and would have been unnecessary, except to exempt such insurance from the provisions of the earlier statute.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1479, 1482, 1485;  Dec. Dig. § 590.*]

·2. STATUTES (§ 224*)—CONSTRUCTION—ASCERTAINING INTENT.

In determining the proper construction of apparently conflicting statutes, the purpose and intent in their passage governs, which is to be gathered, not only from the language of the acts themselves, but from their relation to each other in the order of time of their enactment.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 300, 302, 306;  Dec. Dig. § 224.*]

·3. STATUTES (§ 231*)—CONSTRUCTION—EFFECT OF GENERAL REVISION OF STATUTES.

A construction of apparently conflicting statutes, based on the order of their passage, was not affected by the re-enactment of such statutes in the Consolidated Laws, in view of the statutory provision that, in determining the effect of the provisions of that consolidation, they shall not be considered as having been enacted or re-enacted at the time of the passage of the Consolidated Laws, but as having been enacted as of the various times when they first became laws by earlier statutes.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 312;  Dec. Dig. § 231.*]

Action by Eugene L. Dominick, as administrator with the will ·annexed of Jacob Stern, deceased, against Ida B. Stern.  On motion for a judgment on the pleadings dismissing the complaint after a de-·murrer thereto for insufficiency.  Demurrer sustained, and complaint ·dismissed.

Frank C. Brendel, of Buffalo, for plaintiff.
Alfred L. Becker, of Buffalo, for defendant.

WHEELER, J.  This action is brought by the plaintiff, in his representative capacity, for the purpose of recovering from the defendant

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

surplus of insurance purchased by the testator upon his life in excess of annual premiums of $500, pursuant to section 52 of the Domestic Relations Law (Consol. Laws 1909, c. 14) of the state of New York. The complaint alleges the testator died insolvent, and had been insolvent for many years prior to his death. The plaintiff brings this action in behalf of, and for the benefit of, the creditors of the deceased.

[1] Section 52 of the Domestic Relations Law of the state, under which this action is brought, provides as follows:

"A married woman may, in her own name, or in the name of a third person, with his consent, as her trustee, cause the life of her husband to be insured for a definite period, or for the term of his natural life. Where a married woman survives such period or term she is entitled to receive the insurance money, payable by the terms of the policy, as her separate property, and free from any claim of a creditor or representative of her husband, except, that where the premium actually paid annually out of the husband's property exceeds five hundred dollars, that portion of the insurance money which is purchased by excess of premium above five hundred dollars, is primarily liable for the husband's debts. The policy may provide that the insurance, if the married woman dies before it becomes due and without disposing of it, shall be paid to her husband or to his, her or their children, or to or for the use of one or more of those persons; and it may designate one or more trustees for a child or children to receive and manage such money until such child or children attain full age. The married woman may dispose of such policy by will or written acknowledged assignment to take effect on her death, if she dies thereafter leaving no descendants surviving. After the will or the assignment takes effect, the legatee or assignee takes such policy absolutely. A policy of insurance on the life of any person for the benefit of a married woman is also assignable and may be surrendered to the company issuing the same, by her, or her legal representative, with the written consent of the assured."

It appears by the allegations of the complaint that the defendant was the wife of the testator, and caused his life to be insured for her benefit as widow and beneficiary in the following insurance companies, fraternal benefit societies or associations, and assessment associations, for the following amounts, which were paid, and received by her after her husband's death, to wit:

Germania Life Insurance Company of New York...................... $3,000
Fidelity Mutual Life Insurance Company, Philadelphia............... 3,000
Mutual Benefit Life Insurance Company of New Jersey.............. 2,000
Masonic Life Association........................................ 5,000
Supreme Council of the Royal Arcanum............................ 3,000
Knights Templars and Masonic Mutual Aid Association of Cincinnati, Ohio ........................................................ 5,000
Supreme Court of the Independent Order of Foresters, Toronto, Canada 3,000
Emergent Gratuity Fund of Ismailia Temple, Ancient Arabic Order, Noble Mystic Shrine, Oasis of Buffalo, N. Y....................... 500

The first three of the above-named companies are incorporated "old-line" insurance companies (so-called), and the annual premiums paid for such insurance to them amounted in the aggregate to $260.90. The remaining companies or associations are fraternal benefit societies, or benefit or assessment associations. The assessments paid to such associations amounted at the time of the testator's death to the sum of $468.17. The total amount of premiums and assessments thus paid was the sum of $729.07.

These premiums and assessments, the complaint alleges, were paid by the testator out of his own funds and with his own money; and the plaintiff contends' that the insurance moneys received by the defendant are impressed with a trust in favor of the creditors of the testator for that portion purchased by the excess of premiums paid over $500. The defendant, on the other hand, maintains that the insurance moneys or benefits paid the defendant by the fraternal benefit societies and benefit or assessment associations are by statute exempt from the claims of creditors of the deceased, and therefore no recovery can be had in this action.

Section 212 of the Insurance Law (Consol. Laws 1909, c. 28), governing "life or casualty insurance corporations upon the co-operative or assessment plan," provides:

"The money or other benefit, charity, relief or aid, paid or to be paid, provided or rendered by any such corporation, association or society shall not be liable to be seized, taken or appropriated by any legal or equitable process, to pay any debt or liability of a member, or any debt or liability of the widow of a deceased member of such corporation designated as the beneficiary thereof, which was incurred before such money was paid to her or such benefit, charity, relief or aid was provided or rendered."

Section 238 of the Insurance Law, governing "fraternal beneficiary societies, orders or associations," provides:

"Membership in any such society, order or association shall give to the member the right at any time, upon the consent of such society, order or association, in the manner and form prescribed by its by-laws, to make a change in its payee or payees, beneficiary or beneficiaries, without acquiring the consent of such payees or beneficiaries. All money or other benefit, charity, relief or aid, to be paid, provided or rendered, or which has heretofore been paid, or which shall hereafter be paid, provided or rendered, by any such society, order or association, whether voluntary or incorporated under this article or any other law, shall be exempt from execution, and shall not be liable to be seized, taken or appropriated by any legal or equitable process, to pay any debt or liability of a member, beneficiary, or beneficiaries of a member. All notices of assessment made upon its lodges, councils, branches or members, or any of them by any such society, order or association, shall truly state the cause and purpose of the assessment, and what portion or amount thereof, if any, is to be used for the payment of other than beneficiary claims. An affidavit made by any officer of such society, order or association that such notice was mailed, stating the date of mailing, shall be presumptive evidence thereof."

The question is therefore presented whether the exemptions provided for in the section last quoted control, or whether the provisions of section 52 of the Domestic Relations Law applies as well to moneys realized from co-operative and benefit insurance as it does to "old-line" insurance; for, if section 52 of the Domestic Relations Law does not govern co-operative and benefit insurance, then, inasmuch as the premiums paid for "old-line" insurance did not exceed the $500 limit, there can be no recovery in this action. So far as we have been able to ascertain, or the researches of counsel disclose, there is no adjudicated case reported which passes upon the question presented.

[2] In the investigation of this question, we naturally inquire as to the purpose and intent of the Legislature in the passage of the acts.

This is be gathered, not only from the language of the acts themselves, but from their relation to each other in the order of the time of their enactment into law.

Investigation discloses that as far back as 1840 the Legislature passed an act containing substantially the same provisions as those embodied in the present fifty-second section of the Domestic Relations Law. Chapter 80, Laws 1840. The statute of 1840 has been amended from time to time until it appears in its present form in the Domestic Relations Law of the Consolidated Laws of the state.

The exemption clauses upon which the defendant relies have their source in subsequent legislation. It was not until 1883 that the Legislature of the state undertook to regulate co-operative and assessment life insurance associations. In that year, it passed "An act to provide for the incorporation of co-operative or assessment life and casualty insurance associations and societies." Chapter 175, Laws 1883. Section 19 of that act provided that:

"The money or other benefit, charity, relief or aid to be paid, provided or rendered by any corporation, association or society authorized to do business under this act shall be exempt from execution, and shall not be liable to be seized, taken or appropriated by any legal or equitable process, to pay any debt or liability of a member."

From this beginning, by amendments and other enactments, the statutes governing exemptions of this class of insurance have finally taken the form contained in the present sections 212 and 238 of the Insurance Law of the state.

It seems clear to our mind that when the Legislature passed the first and original statute of 1883, exempting co-operative and assessment life insurance from liability for the debts of a member, its purpose was to save and relieve such insurance from the operation of the statute of 1840, or any of the subsequent amendments thereto, and to secure absolutely to the beneficiaries of such insurance the enjoyment of the benefit of such insurance, free from the claims of the creditors of the members whose life was insured. The framers of the statute undoubtedly had in mind the probability or possibility that in the absence of some such express exemption the prior statute limiting the amount of insurance exempt from the claims of creditors of the insured might operate on co-operative and benefit insurance, and to guard against such a contingency or possibility provided for the exemptions embodied in the law relating to such life insurance.

If it were not to meet just this situation and guard against it, the exemption clauses as originally enacted in the law of 1883 would have been idle; for under the common law, and independent of the statute, such insurance could not have been reached by the creditors of the member whose life was insured. Bown v. C. M. B. A., 33 Hun, 263; Beeckel v. I. C. O. U. F., 58 Hun, 7, 11 N. Y. Supp. 321, affirmed 124 N. Y. 661, 27 N. E. 413; Boasberg v. Cronan (Super. Buff.) 9 N. Y. Supp. 664; Bloomingdale v. Lisberger, 24 Hun, 355; Pingree v. Jones, 80 Ill. 177; Leonard v. Clinton, 26 Hun, 288; Pinneo v. Goodspeed, 120 Ill. 524, 12 N. E. 196; 25 Cyc. 896, and cases cited.

The inference is therefore irresistible that the Legislature intended by these exemptions to place co-operative and assessment insurance in

a class by itself, and to relieve such insurance from the operation of the statute making insurance moneys realized by a wife subject to the debts of the husband where the insurance premiums paid exceed a certain amount. Moreover, to hold otherwise would do violence to the plain and explicit language of the statutes in question.

[3] The fact that these various statutes under discussion have been re-enacted into the Consolidated Laws of the state does not change in any way the construction to be placed upon them. The rules prescribed for the construction of the Consolidated Statutes of the state expressly provides that:

"For the purpose of determining the effect of any of the provisions or sections thereof or any other provision or section thereof, or of any special law theretofore enacted, the several provisions and sections of such laws, and Code amendments and said act amendatory thereof shall not be considered as having been enacted or re-enacted by the Legislature at the time of the passage of the Consolidated Laws or such Code amendments or said act amendatory thereof, *but as having been enacted as of the various times when such provisions and sections first became laws by any earlier statutes,*" etc.

Whether the statutes wholly exempting co-operative and assessment insurance from the claims of creditors of a deceased member are wise or not is not for the court to discuss. Like much benevolent legislation designed for the protection of those dependent on the head of a family, it is possible of abuse. Nevertheless, we must take and administer the law as we find it, and there exist many reasons why these statutes of exemption are, on the whole, wise, and evidently prompted and influenced the Legislature in their passage. In this class of cases, the benefits to be paid are usually only an incident to membership in the fraternal order or association paying them. The benefit paid by any one association is usually limited in amount, whereas the amount of "old-line" insurance which may be written by any one company, or in any one policy, is unlimited. Associations of this character provide a cheap form of insurance as compared with other insurance companies. The assessments to be paid in most assessment companies vary from year to year, instead of being fixed and determined in advance at the time of writing, as in the case of straight "old-line" insurance. The number of assessments may vary from year to year, dependent on the number of deaths of members. In most, if not all, of the co-operative or assessment companies, the beneficiary acquires no vested right in the benefit to be paid prior to the death of the member, but the beneficiary may be changed from time to time prior to the member's death. Doubtless these considerations, in the zeal to save families of members from want, led the state legislators to write the law as we find it on our statute books. And who shall say that on the whole it has not worked well? But, whether wise or not, we deem it the law.

We have therefore reached the conclusion that the defendant's demurrer must be sustained, and judgment directed, dismissing the plaintiff's complaint, with costs.

So ordered.