[L. A. No. 1378.   Department One.—August 5, 1905.]

M. E. SPINKS, Appellant, v. WESLEY CLARK, E. P. BRYAN, and ANNA F. LEACH, Respondents.

EXCHANGE OF LAND FOR OIL STOCK—ACTION FOR RESCISSION—FRAUDU-
LENT REPRESENTATIONS NOT RELIED UPON.—In an action to rescind an executed contract exchanging land for oil stock on the ground of alleged fraudulent representation, where the court found upon sufficient evidence that no representation was made for the purpose

of inducing the exchange, and that plaintiff did not act upon the faith of any false representations made by the defendants, and consented to the exchange and made his conveyance without regard to any such representations, and that there was no actionable fraud, actual or constructive, on the part of the defendants, judgment was properly rendered for the defendants.

Id.—Constructive Fraud — Agency for Sale of Land — Separate Transaction—Offer of Exchange by Plaintiff.—Though the exchangers of the stock were agents for the sale of plaintiff's land, yet where the exchange of the land for the stock was a separate transaction, originating in an offer of the plaintiff upon independent inquiry to exchange the land for the stock, and plaintiff did not rely upon or believe that they were his agents in respect of the stock or for the exchange, and they acquired no information by reason of their agency affecting the proposed exchange, there was no constructive fraud therein by reason of their separate agency for sale of the land.

Id.—Evidence—Representation as to Agency for Stock—Ruling Without Prejudice.—Where there was a representation by such agents that the stock held by them belonged to another person, conceding that evidence, as to what effect it would have had upon him if he had been told that the stock belonged to them, was erroneously excluded, the exclusion was without prejudice, where plaintiff subsequently testified in effect that he did not rely upon such representation, but relied upon other representations, in respect of which reliance the court discredited him.

Id.—Evidence as to Value of Assets—Market Value of Stock—Stipulation.—Where there was a stipulation that the market value of plaintiff's land was five hundred dollars in excess of the market value of the stock, in case the court should find for plaintiff on the question of fraud, and there was no representation that the market value of the stock was based upon its intrinsic value, the exclusion of evidence to show the value of the assets of the corporation, and that the quoted market value was greater than the intrinsic value of the stock, was immaterial, upon the question of damages, or upon the question of motive or intent of the defendants who exchanged the stock for the land.

Id.—Rulings without Prejudice — Evidence Otherwise Given. — Rulings excluding questions were without prejudice where the evidence asked for was otherwise given or the question otherwise substantially answered.

Id.—Incompetent Evidence—Books of Original Lessees—Opinion Evidence.—Evidence of what the books of original lessees showed who sublet to the incorporation was incompetent as being too remote; and a question as to the effect upon the market of selling the amount of stock exchanged was incompetent, as calling for improper opinion evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Byron Waters, and Waters & Wylie, for Appellant.

There was constructive fraud, without reference to fraudulent intent, by reason of an advantage having been acquired of plaintiff by defendants Clark and Bryan, as agents of plaintiff, and their intermediary agent, McConnell. (Civ. Code, sec. 1573; *Burke* v. *Bours*, 92 Cal. 112, 28 Pac. 57; *Broder* v. *Conklin*, 77 Cal. 338, 19 Pac. 513; *Brison* v. *Brison*, 75 Cal. 525, 7 Am. St. Rep. 189, 17 Pac. 689; *Paige* v. *Akins*, 112 Cal. 405, 44 Pac. 666; Story on Agency, sec. 211.) The evidence shows actual fraud within the legal definition thereof. (Civ. Code, sec. 1572; Pomeroy's Equity Jurisprudence, secs. 880, 892; *Cruess* v. *Fessler*, 39 Cal. 336; *Dow* v. *Swain*, 125 Cal. 677, 58 Pac. 271; *Roseman* v. *Conovan*, 43 Cal. 117; *Newman* v. *Smith*, 77 Cal. 22, 18 Pac. 791.) Equity will grant the appropriate relief of compensation against defendants guilty of the fraud, notwithstanding the protection of a *bona fide* purchaser. (Pomeroy's Equity Jurisprudence, sec. 237; *Adams* v. *Lambard*, 80 Cal. 427, 22 Pac. 180; *Toby* v. *Oregon Pacific R. R. Co.*, 98 Cal. 490, 33 Pac. 550; *Barbour* v. *Flick*, 126 Cal. 633, 59 Pac. 122; *Field* v. *Austin*, 131 Cal. 382, 63 Pac. 692; *More* v. *More*, 133 Cal. 493, 65 Pac. 1044.) It was error to exclude evidence of the actual intrinsic value of the shares of stock. (*Beverly* v. *Blackwood*, 102 Cal. 92, 36 Pac. 378; *Dundon* v. *McDonald*, 137 Cal. 2, 69 Pac. 498; *Fitz* v. *Bynum*, 55 Cal. 460; *Hindman* v. *First Nat. Bank*, 112 Fed. 931, 50 C. C. A. 623, 57 L. R. A. 114.)

Graves, O'Melveny & Shankland, George J. Denis, and Anderson & Anderson, for Respondents.

The evidence shows that the exchange was made by plaintiff of his own motion and investigation, without reliance upon any representations of Clark and Bryan, and without any actionable fraud. (*Shaw* v. *Stine*, 8 Bosw. 159; Pomeroy's Equity Jurisprudence, secs. 833, 896, note; *Lee* v. *McClelland*, 120 Cal. 147, 52 Pac. 300; *Rendell* v. *Scott*, 70

Cal. 514, 11 Pac. 779; *Holton* v. *Noble,* 83 Cal. 8, 23 Pac. 58; *Geddes's Appeal,* 80 Pa. St. 442, 460.) There was no constructive fraud. A mere brokerage agency for sale of land does not show a fiduciary relation. (*Clark* v. *Allen,* 125 Cal. 277, 57 Pac. 985; *Siegel* v. *Gould,* 7 Lansing (N. Y.) 177; *Haveland* v. *Price,* 6 Misc. Rep. 372; 26 N. Y. Supp. 757; *Campbell* v. *Yager,* 32 Neb. 266, 49 N. W. 181.) The stock having a market value, no other proof of the value was admissible. (*Redding* v. *Goodwin,* 44 Minn. 355, 46 N. W. 564; *Reynalds* v. *Franklin,* 44 Minn. 30, 20 Am. St. Rep. 540, 46 N. W. 139; *Peak* v. *Derry,* 59 Law T. (N. S.) 78.)

Anderson & Anderson, for Anna F. Leach, Respondent.

The evidence without conflict shows absolutely that Anna F. Leach was a *bona fide* purchaser for value of the land without notice of any fraud.

ANGELLOTTI, J.—This is an action to rescind a contract whereby certain real property of the plaintiff was exchanged for certain oil stock of defendants Clark and Bryan in the Westlake Oil Company. The exchange was effected June 6, 1900. The action was commenced September 21, 1901. The cause of action stated in the original complaint was one for the rescission of the contract upon the ground of fraudulent misrepresentations on the part of Clark and Bryan. On the trial, the complaint was amended by adding thereto certain allegations designed to show, in addition to the actual fraud theretofore alleged, a case of constructive fraud, said allegations tending to show that Clark and Bryan were from January 6, 1897, to the date of the transaction in question, the agents of plaintiff, under a contract of employment for the sale of said real property, and that by reason of such agency Clark and Bryan became possessed of information as to the estimation in which plaintiff held the property, and he reposed faith and confidence in them to the effect that with reference to any sale or negotiation of said property they would use their efforts to obtain the best obtainable price for him.

Anna F. Leach was made a defendant because she had, before the commencement of the action, become the holder of the record title to the real property.

The findings and judgment were in favor of the defendants, and plaintiff appeals from the judgment entered thereon and from an order denying his motion for a new trial.

It is practically conceded that as to defendant Leach the judgment and order must be affirmed. The findings of the court, supported by testimony free from conflict, are to the effect that she purchased the real property for a valuable consideration,—viz., sixteen thousand dollars,—which was the full value thereof, without any notice whatever of any claim on the part of plaintiff, and without any notice of any prior dealings between plaintiff and Clark and Bryan with relation to said property.

Plaintiff contends that although the real property may have found its way into the hands of an innocent purchaser for value, the contract of exchange may nevertheless be rescinded, and Clark and Bryan adjudged, in the event of such rescission, to deliver the money received for such property in lieu of the property itself. It will be assumed for the purposes of this decision that plaintiff's claim in this regard is well founded.

The findings of the court are attacked upon the ground of insufficiency of evidence to sustain them, and this attack presents the main questions for consideration on this appeal.

The alleged fraudulent misrepresentations may for the purposes of the discussion be divided into two classes, the first being representations of Clark and Bryan to the effect that they would not exchange any of their stock in said corporation for plaintiff's real property; that they were not disposing of any of their stock, and that the stock which it was proposed to exchange belonged to a stockholder resident in San Francisco; and the second being certain alleged representations as to the value of the stock, its dividend-producing capacity, the freedom of the corporation from debt, and that the quoted value of the stock upon the stock board was based upon the intrinsic value of the property of the corporation and the merits of the business, and was not at all fictitious or inflated in any way.

To the extent stated above, the trial court found that the representations of the first class had been made. As to the second class, the court found that none of the alleged repre-

sentations had been made, except a single one to the effect
that the corporation had paid two per cent dividends, and
this representation the court found to be true.

A careful examination of the record makes it clear that the
findings as to the precise representations made are sufficiently
supported by evidence. The evidence is also sufficient to sup-
port the finding that the representation made as to dividends
was true.

This leaves us to consider only the effect upon the trans-
action of the representations of the first class—viz., those as
to the indisposition of Clark and Bryan to part with their
own stock—and the further representation in aid thereof, to
the effect that the stock to be transferred belonged to a San
Francisco stockholder.

The trial court found that no representation of any kind
was made by defendants to plaintiff for the purpose of induc-
ing him to make such exchange; that plaintiff did not act
upon the faith of any representation made by defendants,
and consented to such exchange and made his conveyance
without regard to any such representation.

It is clear that if this finding is sustained by sufficient
testimony, it is a complete answer to plaintiff's claim, so far
as alleged actual fraud is concerned.

The well-settled rule in this regard, as stated by Mr. Pom-
eroy, is as follows, viz.: ''Another element of a fraudulent
misrepresentation, without which there can be no remedy,
legal or equitable, is, that it must be relied upon by the party
to whom it is made, and must be an immediate cause of his
conduct which alters his legal relations. Unless an untrue
statement is believed and acted upon, it can occasion no legal
injury. It is essential, therefore, that the party addressed
should trust the representation, and be so thoroughly induced
by it, that, judging from the ordinary experience of mankind,
in the absence of it he would not, in all reasonable probabil-
ity, have entered into the contract or other transaction.''
(Pomeroy's Equity Jurisprudence, sec. 890. See, also, Civ.
Code, sec. 1568.)

The evidence was clearly sufficient to support the conclu-
sion of the court that the representations under discussion
did not operate to induce action on the part of plaintiff. A
brief statement as to some of the evidence will make this
plain.

Plaintiff purchased the real property in January, 1897, through Clark and Bryan, who were partners in the real-estate business, and who, in that transaction, were acting for the vendor, a Mrs. Haley. He paid twelve thousand dollars therefor. The improvements on the property were only of nominal value, and the rents therefrom were very small in proportion to the investment, and this condition continued during the whole period of plaintiff's ownership. He apparently purchased purely for purposes of speculation, and, according to his testimony, at once told Clark and Bryan to put the property on the market for fifteen thousand dollars. No proposition of purchase or exchange that was satisfactory to him was ever made, until the idea of exchanging the same for oil stock occurred to him. In the mean time, oil in considerable quantities had been discovered in Los Angeles, and in January, 1900, the Westlake Oil Company was incorporated, both Clark and Bryan being among the original incorporators. Clark was the secretary. This company acquired the property in the supposed oil-bearing territory, and was successful in producing oil in paying quantities. Prior to June 1, 1901, three dividends of two per cent each on the capital stock were paid. The stock was bought and sold on the market, and the property was apparently a valuable one, both in the eyes of the public and those interested in the corporation.

Plaintiff was very much disappointed in his real-estate investment because of the failure of the property to appreciate in value, and desired some income-producing property. He had also clearly become infected with the "oil fever." He personally commenced investigating as to the merits of Westlake oil stock. He visited the wells of the company many times, and talked to the superintendent in charge, and testified that from his examination on the field it looked like a good proposition. He knew that dividends were being paid. In his investigations he did not seek any information from either Clark or Bryan, beyond asking casually on chance meetings how Westlake was getting on, and receiving the natural reply that it was getting on finely. Finally, and within a few days of the transaction in question, he had become so firmly impressed as to the merits of Westlake that he agreed to accept the offer of another stockholder, one

Hughes, of sixteen thousand shares of the stock, for his real property. He had gone so far as to have his abstract of title continued for Hughes, and there was ample testimony to support the conclusion that he was fully convinced, solely by reason of his own investigation and observation, that the stock was a good investment. According to his statement, the Hughes transaction fell through only because his wife objected to signing the deed, being doubtful as to the advisability of the exchange. There was testimony that he at this time said to a friend: "I have been looking over this oil matter pretty thoroughly. I have spent a good deal of time at it, and I have come to the conclusion that Westlake oil stock is one of the best oil stocks in the market to-day. . . . I have been over the grounds. . . . I find a great deal of oil out there. I find that there is a great deal of land that is undeveloped in their territory, and that if the wells that they put down will prove as good as the wells they have down, there is no failure in the company. I can't see where it could fail."

Under these circumstances, he went to the office of Clark and Bryan, and there saw Bryan. According to Bryan's testimony, plaintiff asked him, "What about Westlake?" and Bryan replied, "Westlake is a pretty good thing. There is only one point to be taken into consideration—if the wells continue to pump as they are now. As to that you are just as good a judge as I am." Plaintiff then asked him about trading stock for his land and said he wanted eighteen thousand shares for it. Bryan testified, "I told him it was paying good dividends, and real estate was quiet, and that I didn't know whether we wanted to trade or not. Also, that the stock was in Clark's exclusive control and he would have to submit the proposition to him." According to defendants' testimony, beyond subsequently calling Spinks up on the telephone and telling him they would send Lee McConnell, a broker, to see him in the matter, this was the only personal interview of either of the defendants with plaintiff, relative to the exchange of his property for stock, prior to the actual closing of the transaction on June 6th.

According to defendants' evidence as to the interviews of June 6th, plaintiff came, after accepting the proposition, simply for the purpose of closing the matter up, giving his

deed and accepting the stock, and no representation of any kind was made thereat, except such as may be implied from the requirement that the deed should be made to the San Francisco stockholder as grantee.

The actual negotiations for the exchange were had between plaintiff and Lee McConnell, the broker sent by Clark and Bryan to plaintiff, in pursuance of the interview between Bryan and plaintiff. The testimony of McConnell upon the subject of these negotiations is to the effect that McConnell approached plaintiff not as a confidential agent at all, but as a mere middleman. He asked him if he cared to entertain a trade of his lot for Westlake. Plaintiff replied that he would—that he had already partly agreed to make such a deed with Hughes, and his wife objected to signing the deed. McConnell told him he could offer him sixteen thousand shares, and plaintiff proposed to make the exchange for eighteen thousand shares. McConnell subsequently met him and told him his proposition was accepted, and that the matter should be closed up at the office of Clark and Bryan, as it subsequently was. In his first interview with plaintiff it is true that he told him that he thought that the stock offered him belonged to a San Francisco stockholder, as he had been informed. He also was quite positive upon the proposition that he informed plaintiff that Clark and Bryan were both buying and selling stock.

Taking all this evidence and other evidence as to the circumstances and conduct of the parties in support thereof as true, as we must in view of the findings of the trial court, it is apparent that previous to any representation of any kind on the part of Clark or Bryan, plaintiff had, as the result of his own investigations, determined to exchange his real property for stock in this company, regardless of the source from which it came; that he himself initiated the negotiations with Clark and Bryan, before the Hughes proposition had been finally rejected, for the purpose of determining whether he could not obtain a better proposition from them than Hughes had made; that he then offered his land to them for eighteen thousand shares of their Westlake stock; that they had the right to assume, and did assume, from his conduct and declarations that it was entirely immaterial to him whose stock was given him for his lot, theirs or another's, and adopted a

somewhat elaborate method of representing that they were not disposing of their own stock in this deal, not with any design of influencing his conduct in the matter, but simply for the purpose stated in their letter of June 2, 1900, to the San Francisco stockholder,—viz., to prevent the impression getting out that they were selling or trading their stock, and that such representation had not the slightest effect in the way of inducing plaintiff to consent to the carrying through of the precise deal he had himself proposed.

The finding of the court upon the issue raised ·by the amendment designed to show a case of constructive fraud is also attacked. From what has already been said as to the evidence, it is manifest that there was ample support therein for the conclusion that Clark and Bryan were not acting as the agents of or for plaintiff in this particular transaction, that neither plaintiff nor any one else thought that they were, that plaintiff was acting for himself upon his own judgment based upon his own investigations as to the relative merit of his real property and Westlake stock, and reposed no faith or confidence whatever in Clark and Bryan in the matter, and that he regarded McConnell not as his agent bound to obtain for him the best bargain he could, but at most as a mere middleman, coming from owners of stock with a proposition for exchange.

The court was fully justified in finding further that Clark and Bryan had not by reason of any transaction with plaintiff become possessed of any information whatever as to the estimation in which he then held the real property, or his desire to dispose of the same, except as far as such information was given by his direct offer to them to exchange the same for eighteen thousand shares of their stock.

Under these circumstances, the contention of plaintiff as to the effect of the prior alleged general agency of Clark and Bryan to sell or exchange this property would appear to be without force.

It cannot be reasonably claimed under the evidence that Clark and Bryan were ever agents of plaintiff to any greater extent than being orally authorized in January, 1897, to put his property on the market for fifteen thousand dollars, and, in pursuance of such authorization, placing and maintaining a "For Sale" sign with their names thereon on the prop-

erty, and regarding the property as property concerning which they were authorized to receive and communicate to the owner offers of purchase, expecting to receive from him a compensation in the event of a sale, and concerning which they had submitted one or two offers which had been declined. It may be conceded, purely for the purposes of this decision, that, as to any proposition submitted to plaintiff by Clark and Bryan, assuming to act under this authority, or under such circumstances as to warrant plaintiff in assuming that they were acting in his behalf, Clark and Bryan would be held to be the agents of plaintiff, and within the operation of the universally recognized equitable rule that forbids the uniting by the agent of his personal and his representative character in the same transaction.

But this concession, which is the utmost that plaintiff can reasonably claim, cannot avail him here. (Clark and Bryan were not assuming to act for him in this matter,) they had acquired no information as to the desire or opinion of plaintiff as to this matter by reason of their so-called agency, there was nothing in their prior dealings which created any relation of trust and confidence as to this property, and (the trial court found upon sufficient evidence "that plaintiff did not in . . . any of the transactions set forth in the complaint relative to the disposition of said property . . . rely upon or believe that the said Clark and Bryan, or either of them, . . . were acting for him at all.")

In other words, whatever may be said as to any general agency on the part of Bryan and Clark in regard to this property, it was a thing entirely separate and apart from this transaction, which can in no way affect its validity.

The case of *Burke* v. *Bours,* 92 Cal. 108, [28 Pac. 57], relied upon by plaintiff as being "the closest akin" of California cases to this case, was a case where the property of the principal was secretly purchased by the agent or subagent in the very transaction, as well as being a case where such agent was invested with some discretion as to the price, by a nonresident principal. There can be no doubt as to the correctness of the decision in that case, or as to the soundness of the views expressed in the opinion, but we cannot see the application thereof to the case at bar.

Various other reasons are advanced by counsel for defend-

ants in support of the findings and decision of the trial court, but in view of our conclusions upon the propositions already discussed, it is unnecessary to consider them. From what has been said, it is apparent that it must be held here that the conclusion of the trial court that there was no actionable fraud, actual or constructive, on the part of defendants, cannot be disturbed.

Certain rulings of the trial court excluding offered evidence are complained of.

The plaintiff was asked what effect it would have had upon him if Mr. Clark had told him at the time of the transaction that it was Clark and Bryan who were exchanging the eighteen thousand shares of Westlake stock for his lot, and an objection to the question on the ground that it was incompetent, irrelevant, and immaterial, and called for a conclusion of the witness, was sustained.

If it be assumed that this ruling was erroneous, we have no doubt that the error must be held to have been without prejudice. The plaintiff was immediately after this ruling asked, "State what induced you to exchange your property for this stock?" and answered, "Relying upon Mr. Bryan and Mr. Clark—both told me in reference to the production of the Westlake Oil Company and the dividends that they were then paying; and furthermore upon the statement that they made to me that they were not selling or disposing of their stock, but on the contrary were acquiring more stock. I reasoned—naturally reasoned—that they were in a position to know the facts in the case and were acting upon them.; consequently it would be thoroughly safe for me to do likewise."

By this answer, plaintiff in terms declared that the representation that Clark and Bryan were not disposing of their stock was one of the inducements which operated to bring about his consent to the transaction. This was substantially what was called for by the question to which the objection was sustained, and all that was essential, if believed by the court, to make out plaintiff's case, so far as the matter of acting under the influence of the representation was concerned. If the trial court did not, in the light of the other evidence in the case, believe the statement made by the witness as to the causes operating upon his mind to produce his consent to the

transaction, and the findings of the court make it plain that it did not, it is manifest that a further statement of the plaintiff to the effect that he would not have completed this contract in the absence of such a representation, could not have changed the views of the court or affected the result.

Plaintiff further complains that by the rulings of the court he was limited in the introduction of evidence as to the value of the shares of stock of the Westlake Oil Company to the market value as fixed by quotation of sales of such stock in the Los Angeles market, and was not allowed to prove the value of the property or assets of the corporation, or to introduce evidence to show that the quoted market value was greater than the intrinsic value of the stock.

It clearly appeared that there was a market value for the stock of this corporation, and it was stipulated by the parties that on June 6, 1900, the market value of the realty was at least five hundred dollars in excess of the market value of the eighteen thousand shares of stock, which excess of value, it was further stipulated, was an amount which would justify a finding that plaintiff suffered material injury by reason of such exchange, in case the court should find for plaintiff on the ground of fraud. This stipulation, regardless of other objections to the proposed evidence, renders the rulings of the court entirely immaterial on this appeal, so far as such evidence may have been pertinent upon the question as to damage sufficient to sustain an action for rescission on the ground of fraud.

The court found that the alleged representations to the effect that the quoted value of the stock upon the stock board was based upon the intrinsic value of the property of the corporation, and that the eighteen thousand shares of stock were legitimately and actually worth eighteen thousand dollars, were never made. These findings made it unnecessary, of course, to determine whether such alleged representations would have been true or false, and, so far as that question is concerned, the exclusion of such evidence could not have prejudiced plaintiff.

It is urged, however, that the proposed evidence was in some way, not clearly specified, relevant to the issue of fraud.

Assuming that evidence as to the actual value of the assets of the corporation, as distinguished from the selling price of

the stock in the market, was admissible, as bearing upon the motive and intent of Clark and Bryan in this transaction, we find no prejudicial error in any of the five rulings pointed out by plaintiff's counsel.

The question asked the witness Jones as to whether the accounts of the Westlake Oil Company which had been offered in evidence showed the amount of investment of money in the works of the company had been fully answered by him in testimony previously given.

The question as to what the books of the original lessees, who sublet to the corporation, showed as to the amounts that had been expended by them upon the property in their explorations for oil, was one the determination of which could not have affected the decision. The question before the court in this connection, looking at the matter according to the theory most favorable to plaintiff, was, at the most, as to the value of the assets of the corporation at and about the time of the transaction here involved, and evidence as to the amounts expended in exploration for oil upon the lands of the corporation prior to the formation of the corporation was so remote as to throw practically no light upon that question. It should be said in this connection that, as we understand the record before us, plaintiff was allowed to introduce in evidence all the books of the corporation.

The question asked the witness McCartney on direct examination as to whether in his opinion there was any such stable, fixed, or steady market price for shares of stock in oil companies in Los Angeles that the demand would have withstood the putting upon that market on June 6, 1900, of shares of the Westlake Oil Company to the amount of eighteen thousand shares, was clearly subject to the objection of incompetency. It called for the opinion of the witness upon matters that were not the subject of opinion testimony.

There was certainly no prejudicial error in sustaining the objection to the question asked the witness Woolacott, on direct examination, as to whether the market quotations of Los Angeles oil stocks "would be a fair criterion upon which to value large blocks of stock, or the total capitalization of oil companies." So far as the question was applicable to the particular stock in question the witness immediately after testified, "I could not say whether the quotations of the West-

lake Oil Company's stock by which the aggregated assets of the company would figure $400,000 would represent a fair valuation of its assets or not.''

We cannot say that the court erred in sustaining the objection to the question asked Clark, on his direct examination, by plaintiff, as to whether he had ''any arrangement whatever with any of the other stockholders relative to the delivery of shares of stock or the manipulation or management or sale of shares of stock or the fixing of prices of shares of stock in that company, upon the market—prices upon the market of stock in that company.''

The question was very general and indefinite and the precise object thereof not clearly apparent. The mere fact that Clark may have had some arrangement with some one or more stockholders relative to the method by which their stock should be placed on the market, or the prices at which the same should be sold, would not necessarily show a condition of affairs material to any issue in the case. Much would depend on the character of the arrangement and the acts of the parties thereunder. If plaintiff had in mind any particular kind of arrangement or action of Clark in this regard which would have thrown light upon the questions involved he should have asked specifically regarding the same, or at least should have stated to the trial court what he expected to show. The question not being such as to itself indicate the materiality or relevancy of the evidence sought to be elicited thereby, and plaintiff having failed to acquaint the court below with the precise object thereof, the court was justified in sustaining an objection thereto.

The judgment and order are affirmed.

Shaw, J., and Van Dyke, J., concurred.