[S. F. No. 6702. Department One.—March 17, 1914.]

In the Matter of the Estate of HENRY WILLIAM WEISS, Deceased.

PROMISSORY NOTE — DETERMINATION OF AMOUNT EXPRESSED — SUFFICIENCY OF EVIDENCE TO SUPPORT FINDING.—In this proceeding involving the question whether the promissory note of a deceased person is for "two" thousand or for "five" thousand dollars, the conclusion of the trial court that the note should be read "five" thousand is not without sufficient support in the evidence, consisting of the note itself and many exemplars in the handwriting of the deceased, testimony of a banker familiar with his handwriting, and other proofs.

ID.—EXPERT TESTIMONY — ADVERSE COMMENTS BY COURT.—Where it appears in such proceeding that the trial judge listened attentively to the testimony of a handwriting expert on the issues whether the disputed word was "two" or "five," and asked various questions of the witness during his examination, it cannot be claimed that the judge refused to consider the expert testimony, because he made remarks emphatically indicating that expert testimony was of little value in such a case.

ID.—READING OF AMOUNT OF NOTE—QUESTION TO WITNESS—STATEMENT OF PURPOSE.—In such proceeding a question to a witness, who first read the note to the payee after the death of the maker, as to whether he read the note to her as a "two". or a "five" thousand dollar note, is properly sustained, if counsel make no statement as to what they intend to prove. Any statement of the witness as to how he then read the disputed word is inadmissible for the purpose of showing what the word really is.

APPEAL from an order of the Superior Court of Napa County. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

William Loewy, Walter Loewy, and Wallace Rutherford, for Appellants.

Frank L. Coombs, and Clarence N. Riggins, for Respondents.

ANGELLOTTI, J.—In the settlement of the final account of the administrator of the Estate of Henry William Weiss, deceased, objection was made by the heirs to the claim of Mary Heymann based on an alleged promissory note of deceased, which had been regularly presented for allowance, and allowed by the administrator and the judge of the superior court for the amount of five thousand dollars, and duly filed. The trial court by its order settling said account decided that the same was a valid claim against the deceased for the full amount of five thousand dollars, with interest from its date of allowance and filing, October 16, 1912, and directed payment thereof. We have here an appeal by the heirs from such order.

It was claimed that the note, which admittedly is a genuine instrument, entirely in the handwriting of deceased, was a note for two thousand dollars only, rather than five thousand dollars, the contention being that a word therein claimed by claimant, to be a "five" is in reality a "two." As read by the lower court, the note is as follows:

"St. Helena, Nov. 27th, 1911.

"I promise to pay to Mrs. Heymann of Our Household the Sum of Five Thousand Dollars in U. S. G. C. This is for her kind care and attention paid to me, and is not to be considered a Gift.

"H. W. WEISS."

The heirs claim that the word before "Thousand," read as a "Five" by the lower court, is in reality a "Two," and that the evidence was insufficient to sustain the conclusion of the trial court to the contrary. The original note and many exemplars of the handwriting of deceased, in evidence in the lower court, have been produced in this court. Careful consideration of these and the other evidence introduced in the trial court has brought us to the conclusion that it cannot fairly be held that the conclusion of the trial court was without sufficient support in the evidence. It must be admitted that the question is not entirely free from doubt. Many rea-

sonable arguments, *pro* and *con,* may be made in the light of a careful examination of the note and exemplars, but, whatever might be thought of the matter if we were exercising the functions of trial judges, we are of the opinion that there is enough in the note itself and the exemplars, taken in connection with the testimony of Mr. Pellet, a banker of St. Helena, who was familiar with the handwriting of deceased, to support the inference and conclusion of the trial judge. We have simply a case where the evidence is conflicting in substantial respects, and the conclusion of the trial court is binding upon us.

It is earnestly urged that the trial court refused to consider competent evidence introduced by appellants, viz.: the evidence given by Carl Eisenschimmel, a handwriting expert. The claim is based upon certain remarks made by the court at the inception of the taking of the testimony of that witness. It is true that the learned judge rather emphatically stated his views as to the value of the testimony of experts on handwriting upon such a question as the one presented in this case, viz., the proper reading of a disputed word in a genuine instrument, and expressed his confidence in his own ability to determine from his own examination of the note and the exemplars what the disputed word was as well as any expert. At the outset of the witness's testimony, the judge discussed this matter at some length, concluding by saying: "But in an ordinary case like this where there is no contention that this is a forgery, and where the letters there speak for themselves, it is simply a waste of time, so far as I am concerned, to take this testimony. You can go ahead and question Mr. Eisenschimmel for the benefit of the record in case you want to take it up in case I should rule against you " The witness was examined at great length by appellants as to the many reasons for his conclusions, and an examination of the transcript shows that the judge must have listened attentively to his statements, for he asked him questions at various times during the giving of his testimony. In rendering his decision the learned judge said there was no question in his mind as to the proper reading of the word, and followed this by this statement, which is specially relied on by appellants: "I would rather take Frank Pellet's testimony upon that question than all the expert testimony of

Mr. Eisenschimmel—with all due respect to him— . . . or a whole army of these handwriting experts. These handwriting experts can made an 'I' look like a 'T' if they want to, or make an 'o' look like an 'e' '' etc. We do not consider ourselves warranted in holding from these statements of the judge that the record discloses that he refused to give consideration to the testimony of Mr. Eisenschimmel. As we have said, the record discloses that he listened to it, and followed it closely enough to ask various questions of the witness during the course of the examination. The mere fact that he made the statements he did at the inception of the giving of the witness's testimony does not warrant any such assumption, especially in view of what followed, the taking of the testimony and the apparent attention of the judge thereto. The concluding statement of the judge in rendering his decision did not intimate a failure to take the testimony of Eisenschimmel into consideration, or anything more, in addition to his apparent view that an expert witness in handwriting was ordinarily something of an advocate, than that the opinions and reasons of the expert witness did not appeal to him as against his own opinion based on an inspection of the note and exemplars, and the testimony of Mr. Pellet. Giving due attention and consideration to the testimony of Mr. Eisenschimmel it did not offset in his mind the evidence in support of the theory that the disputed word was a "five" rather than a "two." We are satisfied that upon the record before us it must be assumed that the trial judge gave due consideration to all of the evidence introduced; and that the complaint that there was any "irregularity in the proceedings of the court" by which appellants were prevented from having a fair trial must be held to be without sufficient support in the record.

Mr. Schunemann, who, on the death of deceased, took possession of certain papers found in his bureau drawer, including the note here involved, which was contained in a sealed envelope, addressed to Mrs. Heymann, testified that he handed the envelope to Mrs. Heymann and that she opened the envelope and handed the note to him to read, and that he read it. The following then occurred:

"Q. Did you read that note as a two or a five at that time?

"Mr. Coombs. Wait a moment. Your honor, whether he read it as a two or a five, is immaterial.

"The Court. That does not matter what he read it. Sustained.

"Mr. Rutherford. That was in the presence of Mrs. Heymann.

"The Court. It does not matter what he read, the question is, what is it.

"Mr. Loewy. We wish to show later on, if your honor please, what Mrs. Heymann said at that time.

"The Court. I do not care what she said.

"Mr. Loewy. That would be an admission, if your honor please.

"The Court. This note speaks for itself.

"Mr. Coombs. It speaks for itself.

"The Court. It speaks for itself. You cannot change that note by what somebody may have thought about it or said about it.

"Mr. Loewy. If Mrs. Heymann was supposed to receive—

"The Court. I have ruled on it. That is enough."

It is urged that the court erred in the ruling refusing to allow an answer to the question "Did you read that note as a two or a five at that time?" Of course, any statement of the witness as to how he then read the disputed word was inadmissible for the purpose of showing what the disputed word really was. It might be admissible in connection with a statement made by Mrs. Heymann in reply, for the purpose of showing some admission by her against interest, not to show her opinion as to what the disputed word in fact was, but, as suggested in appellants' brief, upon the question of delivery or nondelivery of the note to her by deceased before his death, which was a matter in issue in the lower court. But the difficulty with appellants' claim in this regard is that the matter of any proposed admission was not stated in the lower court. Apparently the court understood that it was expected to show only some statement or admission of Mrs. Heymann as to her then opinion as to the amount specified in the note. Counsel for appellants nowhere made any statement as to what they expected to prove in this regard, or any specific offer of proof of an admission against interest. We are of the opinion that the record does not warrant a conclusion that the trial court refused to allow appellants to make any such statement of what was expected to be proved, or offer of proof. As sub-

stantially held in *Spinks* v. *Clark,* 147 Cal. 439, 453, [82 Pac. 45], the question and statements of counsel not being such as of themselves indicate the materiality or relevancy of the evidence sought to be elicited thereby, and appellants having failed to acquaint the court below with the precise object thereof, the court was justified in sustaining an objection thereto.

No other point is made in the briefs for reversal.

The order appealed from is affirmed.

Shaw, J., and Sloss, J., concurred.