### SHAVER v. SHAVER.

(Supreme Court, Appellate Division, Third Department. November 16, 1898.)

INSURANCE—ASSIGNMENT OF POLICY—FRAUDULENT CONVEYANCES.

    An insolvent applied to a company for insurance payable to his brother in place of one that had been allowed to lapse. The company refused to issue a policy to the brother, but issued one payable to him or his administrator and suggested to insured that he could accomplish the same result by an assignment to his brother, which was done. Insured's administratrix claimed the amount of the policy on the ground that the assignment was in fraud of creditors. *Held* that, the contract of insurance being solely for the benefit of the brother, the assignment did not transfer anything in which the creditors had an interest.

Appeal from special term.

Action by Martin Shaver against Ella G. Shaver, as administratrix of Charles H. Shaver, deceased, to recover certain insurance. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

John P. Curley (J. K. Long, of counsel), for appellant.
L. E. Griffith (Olin A. Martin, of counsel), for respondent.

PARKER, P. J. The following facts are not disputed in this case: Since 1885, Charles H. Shaver had carried upon his life a policy of insurance, which, by its terms, was payable upon his death to his brother, Martin Shaver. In August, 1895, owing to a difference between the insured and the agent of that company, that policy was allowed to lapse, and the one in question was taken out from another company. In the application for insurance the insured asked that it be made payable to his brother, Martin, but the company replied that it would not write a policy in that way, but that he could accomplish the same result by assigning the policy. And they sent him a policy payable to himself, his executors, administrators, or assigns, and the amount of which was $1,000. To this the insured replied that he wanted it for his brother, as stated in the application, but, as the company preferred to have it in this way, he would make the assignment. Thereupon the agent of the company furnished to the insured two blank assignments, and wrote therein in duplicate an assignment of the policy from him to his brother. The insured thereupon executed both of them, which were witnessed by the agent. One was delivered, with the policy, to the insured, and the other retained for the company. The

assignment left with the insured was thereupon promptly delivered by the insured to his brother, Martin. The premium of $11.87, due upon delivery of the policy, was paid by the insured, and also the subsequent one which became due in November, to the same amount. On December 10, 1895, the insured, Charles H. Shaver, died, and his brother, Martin, as assignee and owner of the policy, claimed from the company the $1,000 due upon it. The defendant herein, as administratrix of said deceased, also made claim to the same. Action was commenced against the company by Martin Shaver. The company caused the administratrix to be substituted as defendant in its place, and paid the money into court, and the question here presented is whether the brother or the administratrix is entitled to such fund. The administratrix challenges the plaintiff's right to this money solely on the ground that the assignment to him was in fraud of the creditors of the deceased; and such claim of fraud is based solely upon the fact that at the time he took out the insurance in question the deceased was insolvent, and that the assignment was utterly without any consideration. The trial court has so held, and has given judgment to the defendant for the full amount of the policy, and from that judgment this appeal is taken.

The decision of the trial court proceeds upon the idea that at the time the policy was assigned it was a valuable asset belonging to the deceased, and that, being insolvent, he could not lawfully donate the same to his brother; that the fraud which such an assignment worked against his creditors vitiated the assignment, and left the policy as an asset of his estate at the time of his death. The conceded facts, in my judgment, negative such a conclusion. It is manifest that the policy in question was taken out by the deceased for the benefit of his brother. It evidently was to take the place of the one that had been allowed to lapse, and the deceased had never manifested any intent to take out an insurance for the benefit of his estate. Although made payable to himself or to his estate, an assignment of it to his brother was delivered simultaneously with the policy. In fact, as soon as the policy had an inception, and became operative at all, it began to operate for the benefit of his brother, as assignee thereof. The premium was paid that it might so operate, and it is clear that neither that premium nor any other would have been paid had it not so operated. Both the insured and the company recognized the insurance as one taken out for the benefit of the brother. Under the facts, the case stands as if the policy had been made payable to the brother, and the assignment was but a mode of so providing. The rights of the parties, therefore, are to be determined as if the policy had so provided, and in that view it is difficult to see upon what principle fraud can be charged against the assignment. The deceased was under no obligation to insure his life for the benefit of his creditors, and therefore no fraud could be charged against him for having the policy which he did take out made payable to his brother, instead of to his estate. And no fraud can be predicated upon the assignment in question, because that was but the method by which his brother was designated as the one for whose benefit the policy was taken, and to whom it was to be paid. The whole transaction, taken together, was but a

54 N.Y.S.—30

contract between the deceased and the company to insure his own life for the benefit of his brother, and hence the assignment in question did not transfer anything in which the creditors ever had the slightest interest. Concede that the insurance to the use of the brother was purely voluntary, and without consideration, and concede that the deceased was insolvent at the time he took it out, nevertheless, by taking it out, he diverted nothing from his creditors, save the small premium which he paid therefor. Certainly it could not be said that if the policy had been made payable to the brother the amount due thereunder had been wrongfully diverted from the creditors because the insolvent deceased had not taken it out payable to his estate. Nor could any claim be sustained that in equity the amount so due to the brother should be paid to them. For the same reasons, under the conceded facts in this case, I conclude that the money due upon this policy has never been diverted from the creditors of the deceased, and that they have no claim upon the same. I am not to be understood as holding that an insolvent debtor is at liberty to divert moneys from his estate, at the expense of his creditors, for the purpose of paying premiums to insure his life for the benefit of another. Except in those instances and to the extent that he is authorized by statute to do so for the benefit of his family, it may be that such payments may be reached by the creditors. But that is not the question presented here. The judgment in this case takes the whole of the insurance from the person for whom the insured designed it, and gives it to his creditors. In my opinion, such judgment is erroneous, and should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur.