[Civ. No. 6120.  First Appellate District, Division Two.—March 3, 1928.]

DOLLIE GORMAN DOTSON, Respondent, v. INTERNATIONAL LIFE INSURANCE COMPANY, Appellant.

Peyton H. Moore for Appellant.

Frank D. McClure for Respondent.

STURTEVANT, J.—As beneficiary thereunder, the plaintiff commenced an action against the defendant to recover on an insurance policy taken out by her deceased husband and written in favor of the plaintiff. The action was tried before the trial court sitting with a jury. The jury returned a verdict in favor of the plaintiff and the defendant appealed.

In her complaint the plaintiff pleaded (1) the application for insurance, (2) the policy, (3) the nonpayment, and thereupon she asked judgment for the amount due on the face of the policy. The defendant interposed an answer which contained certain denials, and then it specifically

quoted certain questions propounded to the plaintiff's husband and his answers thereto. Thereupon such additional allegations were made in the answer as would constitute a defense for false representations on the part of the insured. Later the defendant filed an amendment to its answer, in which it sets forth additional questions and answers and thus extended its defense. It is of importance to note at this time that neither party in its written pleadings or the replication afforded by the statute (Code Civ. Proc., sec. 462) attempted to prove an estoppel. As a part of her replication it was the theory of the plaintiff that, so far as the alleged false answers are concerned, (1) the answers claimed by the defendant were never made, (2) that the answers which were made were true and were not false, and (3) that the answers which her deceased husband made did not deceive and were not made to deceive the defendant.

The trial court, among others, gave the following instruction: "You are instructed that, in order for the defendant company to succeed in this action, it is necessary for it to prove that some one or more of the questions in the application were untruly answered by the insured, with knowledge of such untruth and with intent to deceive, and that the defendant company was misled and deceived by and relied on such answers in entering into the contract of insurance; in other words, that the misrepresentation was, in your opinion, of such nature, weight and force that you can say that without such misrepresentation the contract would not have been entered into." The defendant contends that the instruction as given had the effect of submitting to the jury the question as to the materiality of each of the alleged false representations, and thereupon it asserts that prejudicial error was committed, and it cites and relies on *McEwen* v. *New York Life Ins. Co.*, 23 Cal. App. 694, 697 [139 Pac. 242]. In defense of the instruction the plaintiff quotes parts of the contract and contends that the instruction but told the jury that it should weigh the fraud, if any. Something, perhaps, may be said in favor of each contention. Nevertheless, the instruction was far from being a model. Because of ambiguity alone it should not have been given. However, we may not with certainty say that the giving of the instruction was prejudicial error.

The application for insurance was made on the twelfth day of September, 1923. Among others it contained the following questions and answers: "Have you undergone any surgical operation or ever had disease of bone or joints, spinal curvature, or any bodily malformation? Ans. Tonsillectomy, August, 1921. When did you last consult a physician and for what? Ans. Never."

Acting upon the request of the plaintiff the trial court instructed the jury as follows: "You are instructed that the statement of the insured that he never had consulted a physician cannot be considered a material misrepresentation, in the face of the further statement of the insured that he underwent an operation for tonsillectomy in 1921, which clearly implied and brought to the attention of the defendant company the fact that he consulted a surgeon or physician about the time of such operation." The instruction has the vice of assuming as a fact that the statement of the applicant for insurance to the effect that he had never consulted a physician is as completely qualified by his other answer that he had undergone tonsillectomy in August, 1921, as the evidence in the case would require, in order to make these two statements, taken as a whole, truthful. The evidence, however, showed that the deceased had consulted other physicians, and for physical ailments other than that suggested by the tonsillectomy. Dr. Dow testified that after the tonsillectomy Dotson came to his office and requested him to give his medical history to another physician, who he stated would call for it, but who did not. He also testified, "Well, I had referred him to Dr. Byington and I know other physicians had taken care of him, but I do not remember their names at this time, none that I can recall. . . . He also called upon me at the time he was injured in a street car accident in 1921 or 1922, at which time I referred him to Dr. Byington." Dr. Byington testified that he treated Dotson for injuries received in the street-car accident, and that he had seen him professionally on at least one other occasion. Dr. Meredith testified that he treated Dotson professionally in the fall of 1923, or in December of that year. Upon objection made his testimony was limited to such matters as would indicate Dotson's state of health at the time he applied for insurance in September, 1923.

He said he observed diseased conditions which appeared to be of a chronic nature and to have existed for more than three or four months. It was a dropping of the lower jaw, a sort of paralysis which prevented him from masticating his food and required him to live mostly on soups. The doctor also testified that he treated him for asthma; that the asthma was chronic, and that Dotson had had other physicians doctoring him previously; that Dotson mentioned two or three other physicians who had treated him. This doctor testified that he did not attribute the paralysis to the tonsillectomy, and that it was beyond the reach of medicine and was due to some nervous condition of the cerebrospinal system or the nervous system of the brain.

Further testimony indicated that after the application for insurance the condition of health of the insured gradually became worse until he died on March 9, 1924, six months after the insurance policy was issued. The cause of death was given as "cerebral hemorrhage and central nervous system lues. Cause unknown. Sick about one-half year. Inability to swallow, choking and inability to get breath. Duration about one-half year."

It may be conceded that there was testimony of other witnesses who gave testimony opposed to this, such as the wife of the insured, who stated that he enjoyed good health, and the testimony of Dr. Guyton, who testified that a Wasserman blood test was negative in 1924. This testimony, however, merely formed a conflict and it was a conflict of evidence which should be determined by the jury. The instruction given and complained of, which we are now considering, had the effect of withdrawing from the jury a consideration of the evidence outlined, which, if believed, would fully justify the jury in concluding that the insured's representation that he had never consulted a physician was false and fraudulent even as qualified by his other answer that he had undergone an operation for tonsillectomy in 1921. We think the giving of this instruction was a prejudicial error for which the judgment must be reversed.

Defendant also attacks an instruction worded as follows: "You are instructed that it is provided in the policy of insurance that all statements of the insured are, in the absence of fraud, to be deemed representations and not war-

ranties, and therefore an untrue statement in the application would not avoid the policy unless you consider that the defendant company has proved to your satisfaction by a preponderance of evidence that it would not have taken the risk if that untrue statement had not been made.'' The defendant complains that the instruction placed the burden on the defendant to prove ''that it would not have taken the risk if the alleged untrue statement had not been made.''

In these cases in general the burden rests on the party pleading fraud to prove that it relied on the alleged false representation and acted thereon. (12 Cal. Jur., p. 750, sec. 29.) Defendant does not cite any authority showing that a different rule applies to insurance policies.

The defendant asked, and the trial court refused to give, four different instructions. Each one stated certain facts as constituting a defense, but each one wholly omitted to recite that the defendant believed the alleged misrepresentation and acted thereon. The trial court did not err. (*Spinks* v. *Clark,* 147 Cal. 439, 444 [82 Pac. 45] ; *Hutchason* v. *Spinks,* 3 Cal. App. 291, 292 [85 Pac. 132] ; 12 Cal. Jur. 750.)

The defendant asked the court to instruct: ''If the jury believe all of the evidence in this case, you will find for the defendant.'' That instruction assumed that the plaintiff had offered no testimony, or that the defendant had produced complete proof of one or more defenses to the plaintiff's complaint and that there was no substantial conflict in the evidence thereon. Neither theory is supported by the record. The instructions were properly refused. (*Estate of Sharon,* 179 Cal. 447, 459 [177 Pac. 283] ; *Spaulding* v. *Mutual Life Ins. Co.,* 94 Vt. 42 [109 Atl. 22, 28].)

The defendant claims that the attorney for the plaintiff was guilty of misconduct in stating to the jury what ''he believed'' the facts to be. The record discloses no error.

It also claims that the trial court made improper statements of fact in the presence of the jury. The record does not support the claim; to the contrary, it shows that the action was most carefully tried.

Finally, it is claimed that an objection was sustained to a question propounded by defendant's counsel. Conceding

such to be the fact, it also is a fact that the same question was later propounded to the same witness by the same party and the witness was allowed to testify fully on the subject.

The judgment is reversed.

Koford, P. J., and Nourse, J., concurred.