[Civ. No. 209. Fourth Appellate District.—October 22, 1930.]

NORTH BRITISH & MERCANTILE INSURANCE COMPANY, LTD. (a Corporation), et al., Appellants, v. RUTH L. INGALLS, Respondent.

W. W. Hindman and Jennings & Belcher for Appellants.

Isaac Jones, Martin J. Coughlin and W. E. Byrne for Respondent.

MARKS, Acting P. J. — Appellants are corporations organized for the purpose of writing various forms of insurance, and are licensed to do business in the state of California. Respondent is the widow of J. S. Ingalls, deceased, who died November 26, 1924. During his life he was engaged in the business of writing insurance as agent for the appellant companies. Shortly after the death of J. S. Ingalls, respondent was appointed executrix of his last will and testament and entered upon the discharge of her duties as such. The life insurance companies hereinafter referred to, had written insurance upon the life of deceased, with respondent named as beneficiary in each policy, except two. These two policies were in the sum of $2,000 each, and were made payable to his estate. In each of the policies here involved the insured reserved the right to change the beneficiary. After the death of deceased, respondent received from the insurance carriers the sum of $67,355.22, for herself, and $4,000, as executrix of the estate of deceased. On the fourteenth day of December, 1925, she filed an inventory and appraisement of the property of the deceased which showed total assets of the value of $17,966.58. The claims and debts of deceased amounted to the sum of $44,591.34. Among them were claims in favor of the insurance companies who are appellants here, in the sum approximately of $28,000.

Appellants instituted this action against respondent to subject the insurance moneys received by her personally to the debts of deceased. It is alleged in the amended complaint that at the time of the death of deceased he was insol-

vent and that the payment of the money to respondent on the insurance policies was an act in fraud of the creditors of deceased, and was therefore void as against such creditors. It is the theory of appellants that the insurance policies were the community property of the deceased and respondent; that a gift of such community property was effected by deceased to respondent and became effective upon his death, at which time his estate was wholly insolvent, and that such gift was in fraud of creditors. As a further argument, it is urged on behalf of appellants, that if a gift or transfer of the policies of insurance became effective prior to the death of deceased, it was a gift in contemplation of death and must be regarded as a legacy in so far as the creditors of deceased are concerned.

The case was tried before the court without a jury and after judgment rendered in favor of respondent comes before us on the judgment-roll alone.

It appears that the insurance policies upon the life of deceased were issued and the premiums made payable upon the following dates: March 22, 1920, policy No. 387114 of the Pacific Mutual Life Insurance Company was issued, premium ($85) made payable quarterly on the twenty-second days of June, September, December and March of each year. Policy No. 464363 of the Pacific Mutual Life Insurance Company was issued July 24, 1922, premium ($669) made payable in advance annually on the twenty-fourth day of July each year. Policy No. 500184 of the Pacific Mutual Life Insurance Company was issued June 5, 1923, premium ($136.80) made payable annually in advance on the fifth day of June of each year. Policy No. 1159324 of the Northwestern Mutual Life Insurance Company was issued June 20, 1916, premium ($63.38) made payable annually on the twentieth day of June in advance of each year. Policy No. 1304260 of the Northwestern Mutual Life Insurance Company was issued January 2, 1919, premium ($30) made payable quarterly on the second days of January, April, July and October of each year. Policy No. 1304261 of the Northwestern Mutual Life Insurance Company was issued January 2, 1919, premium ($30) made payable quarterly on the second days of January, April, July and October of each year. Policy No. 104345 of the Northwestern Mutual Life Insurance Company was issued May 27, 1921, premium ($61.26)

made payable annually in advance on the twentieth day of May of each year. Policy No. 1159323 of the Northwestern Mutual Life Insurance Company was issued June 25, 1923, premium ($63.38) made payable annually in advance on the twentieth day of June of each year. Policy No. 560727 of the Union Central Life Insurance Company was issued November 2, 1917, premium ($38.40) made payable quarterly on the second days of February, May, August and November of each year. Policy No. 648474 of the Union Central Life Insurance Company was issued April 26, 1920, premium ($82) made payable quarterly on the second days of July, October, January and April of each year. Policy No. 707272 of the Union Central Life Insurance Company was issued December 22, 1921, premium ($311.10) made payable annually in advance on the seventeenth day of December of each year.

The deceased became indebted to the appellants as follows: To the National Fire Insurance Company of Hartford during the months of June, July, August, September, October and November, 1924; to the Colonial Fire Underwriters Agency of Hartford during the months of August, September, October and November, 1924; to the Pennsylvania Fire Insurance Company of Philadelphia during the year 1924; to Fidelity & Casualty Company of New York during the year 1924, and to the North British & Mercantile Insurance Company during the year 1924.

On all issues of fraud the court found against the contentions of appellants. The portions of the finding essential to this appeal are as follows:

"That the said J. S. Ingalls was not insolvent at the time of his death; but that the estate of said J. S. Ingalls, deceased, is insolvent."

"That the policies of insurance referred to in the affirmative allegations contained in paragraph X of defendant's answer to the first cause of action set forth in plaintiff's amended complaint on file herein, upon which defendant alleges she collected certain moneys from certain life insurance companies, are the same policies of life insurance herein found in which defendant was named the beneficiary thereof and upon which it is herein found certain sums of money herein specified were paid to her as such beneficiary. That at the time each of said policies of life insurance, in

which it is herein found that defendant was named beneficiary thereof, was obtained, acquired and issued, and during all the times each thereof was maintained, and at the time each, every and all of the premiums thereon were paid, the said J. S. Ingalls was solvent and not in contemplation of insolvency. And that none of said life insurance policies was obtained, acquired or issued, or any premium thereon paid, and that the defendant herein was not named therein or permitted to remain as the beneficiary of any thereof, and defendant did not collect any of the proceeds from any of said life insurance policies, with the intent on the part of either said J. S. Ingalls or the defendant herein, to hinder, or delay, or defraud any creditor of said J. S. Ingalls, or any other person of his demands.''

''That the only creditors the said J. S. Ingalls had, and of his estate, are those who after his death presented to and had allowed by the said executrix and probate court claims against said J. S. Ingalls, deceased, and his said estate. That each and every one of the obligations of the said J. S. Ingalls for which such creditors so presented and had allowed such claims, was incurred at a time long subsequent to the respective times when the said J. S. Ingalls obtained and had issued each, every and all of the aforesaid life insurance policies, and at a time subsequent to the payment of most of the premiums thereon. That at the respective times each, every and all of the said policies of life insurance were obtained and issued the said J. S. Ingalls was not indebted to the plaintiffs, or to any, or either of them, or to any one of the persons, firms, or corporations, who presented to and had allowed by said executrix and probate court any claim against the said J. S. Ingalls, deceased, or to his said estate; that none of the plaintiffs, or any one of the persons, firms or corporations who presented to and had allowed by said executrix and probate court any claim against said J. S. Ingalls, deceased, or his said estate, was a creditor of said J. S. Ingalls at the or a time when any of said policies of life insurance were obtained or issued. That each and every one of said policies of life insurance were obtained and issued, and most of the premiums thereon paid, at a time long prior to the time the said J. S. Ingalls became indebted to any one of the plaintiffs or to any one of the persons, firms or corporations who after the death of the said J. S.

Ingalls presented to and had allowed by said executrix and probate court any claim against said deceased, J. S. Ingalls, or his said estate."

"That the defendant was not named as beneficiary in any of said life insurance policies as trustee, or otherwise, for the said J. S. Ingalls, or for any of his creditors."

"That the plaintiffs at the commencement of the trial of this action in open court expressly waived any and all right plaintiffs may have had to a judgment for the amount of premiums paid by the said J. S. Ingalls on account of said life insurance policies at a time when he, the said J. S. Ingalls, may have been insolvent."

The question presented upon this appeal is a new one in the jurisprudence of California. We have been cited to but few decisions of the courts of this state that are of material value to us in reaching our conclusions. The identical question has been passed upon many times by the courts of sister states which have held with surprising unanimity against the contention of appellants.

Appellants' arguments, based upon numerous California decisions and code sections, are extremely ingenious and are forcefully presented. They base their theory of the case upon the doctrine announced in *Union Mutual Life Ins. Co.* v. *Broderick,* 196 Cal. 497 [238 Pac. 1034, 1038], and other kindred cases. In the Broderick case, the deceased, Herbert D. Broderick, took out a policy of insurance on his life with his wife named therein as his beneficiary, with the right reserved to himself to change the beneficiary. In consideration of a loan to him of $1000 by his sister, he changed the beneficiary in the policy from his wife to his sister, who paid some of the subsequent premiums on the policy. In reaching its conclusions the Supreme Court held as follows:

"The policy of insurance in this case reserved to the assured the right to change its beneficiary. The rule in such cases is well stated in *New York Life Ins. Co.* v. *Bank· of Italy,* 60 Cal. App. 602 [214 Pac. 61], wherein it is said: 'It is true that under a policy reserving to the assured the right to change the beneficiary the interest of the designated person prior to the death of the insured is a mere expectancy in an inchoate or incomplete gift, which is subject to revocation at the will of the insured, and that the power of revocation which would defeat it might be exercised up to the

moment of his death. When, therefore, the deceased substituted the different enumerated persons in the place of his estate as beneficiaries he initiated a gift which, in the case of appellant, became complete by the death of the insured without revocation. And this is so notwithstanding that the premiums were paid from community funds. (*McEwen* v. *New York Life Ins. Co.*, 23 Cal. App. 694 [139 Pac. 242]; *Shoudy* v. *Shoudy*, 55 Cal. App. 447 [203 Pac. 437].)' ''

See, also, *Blethen* v. *Pacific Mutual Life Ins. Co.*, 198 Cal. 91 [243 Pac. 431]; *New York Life Ins. Co.* v. *Dunn*, 46 Cal. App. 203 [188 Pac. 1028]; *New York Life Ins. Co.* v. *Bank of Italy*, 60 Cal. App. 602 [214 Pac. 61]; *Estate of Castagnola*, 68 Cal. App. 732 [230 Pac. 188]; *Mutual Benefit Co.* v. *Clark*, 81 Cal. App. 546 [254 Pac. 306]; *Denike* v. *Denike*, 86 Cal. App. 493 [261 Pac. 322]; *Dotson* v. *International Life Ins. Co.*, 89 Cal. App. 653 [265 Pac. 357]; *Blackburn* v. *Merchants Life Ins. Co.*, 90 Cal. App. 362 [265 Pac. 882].

From the doctrine we have quoted from the Broderick case, appellants next pass to four sections of the Civil Code, which provide as follows:

Section 1149. "A gift in view of death is one which is made in contemplation, fear, or peril of death, and with intent that it shall take effect only in case of the death of the giver."

Section 1153. "A gift in view of death must be treated as a legacy, so far as relates only to the creditors of the giver."

Section 3440. "Every transfer of personal property, other than a thing in action, or a ship or cargo at sea or in a foreign port, and every lien thereon, other than a mortgage, when allowed by law, and a contract of bottomry or respondentia, is conclusively presumed if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be · fraudulent, and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any persons on whom his estate devolves in trust for the benefit of others than himself, and against purchasers

or encumbrancers in good faith subsequent to the transfer. . . . ''

Section 3442. ''In all cases arising under section twelve hundred and twenty-seven, or under the provisions of this title, except as otherwise provided in section thirty-four hundred and forty, the question of fraudulent intent is one of fact and not one of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration; provided, however, that any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors.''

To the foregoing sections cited by appellants we add, as pertinent, the following section of the same code:

Section 3439. ''Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor.''

With these provisions of law before them, counsel for appellants argue that respondent had only an expectancy, and not an estate, in the benefits to be derived under the policies of insurance; that this expectancy did not ripen into an interest until the death of deceased; that upon the death happening, a gift of the benefits occurred from the husband to the wife; that as the gift was without consideration, and as the husband was insolvent at the time, it was void as against his creditors. As an alternative proposition they argue that if the gift did not occur at the time of the death of the husband, it took place at some prior date and was in contemplation of death and therefore void. We need spend no time on this latter proposition. The trial court found all the facts against the contention of appellants, upon which they must rely to establish a void gift *inter vivos*. As the evidence is not before us we must assume that it supported these findings which are, therefore, binding upon us.

The trial court further found that J. S. Ingalls was not insolvent at the time of his death. It also found with great particularity that the value of his estate was $17,966.58, and

his debts $44,591.34. In view of this latter finding we will assume that Ingalls was insolvent at the moment of his death. As the court found that at the times all the premiums on the insurance policies were paid, Ingalls was solvent, and, as the last premium was paid on November 2, 1924, we will further assume that the insolvency occurred after that date, and at the time of, or just before his death, on November 26, 1924. The trial court found that the insurance premiums were paid with either the separate funds of deceased, or with the funds of the community. Counsel for appellants have assumed that community funds were used for this purpose.

The record is silent upon the question of whether the demands of appellants were the separate debts of deceased, or obligations of the community. In the absence of the testimony we must assume that they were of such a character as to sustain the findings and judgment. (*E. E. Mc-Colla Co.* v. *Sleeper*, 105 Cal. App. 562 [288 Pac. 146].)

Under the law as it now stands, we would probably hold that a wife named as beneficiary in an insurance policy on the life of her husband, the premium having been paid from community funds, and in which the right had been reserved to the insured to change the beneficiary, has a greater interest in the insurance than a bare expectancy which might be defeated by the caprice of her husband. (*Blethen* v. *Pacific Mutual Life Ins. Co., supra; Union Mutual Life Ins. Co.* v. *Broderick, supra.*) For the purpose of this opinion, however, we will assume that the contention of appellants on this phase of the case is correct, and using this assumption, we will then consider the question of whether or not there was any fraud on the part of either the husband or the wife, in the change of the rights of the wife from a mere expectancy to a vested interest in the insurance benefits.

Section 3440 of the Civil Code makes every *transfer* of personal property void as to creditors under the conditions specified therein. Section 3442 of the Civil Code provides that every *transfer* of property *made* or *given voluntarily*, or without consideration, is void as to existing creditors. Section 3441 of the same code gives the creditor the right to avoid the *act* of the debtor where the fraud obstructs the right of the creditor to take the property affected.

Certainly, in the case before us there was no fraud on the part of anyone in the act of the deceased in taking out

the policies of insurance on his life. He was solvent at the time and none of the appellants were then his creditors. There was nothing wrong in naming his wife as beneficiary in these policies. The law looks with favor upon the attempt of the husband to provide a competence for his widow. There was nothing wrong in his paying the premiums on this insurance. He was solvent when all these premiums were paid. If they had not been paid the policies would have lapsed and appellants would not be before the courts pressing this suit for the relief they desire. At the time the great majority of the premiums were paid appellants were not the creditors of deceased. Of what, then, must the appellants complain, and upon what must they base their charges of fraud? There are but two elements in the case left to them, namely, the death of deceased and the ripening of the expectancy in the insurance benefits into an interest by operation of law. Can fraud be predicated solely upon death and the operation of law? Death has cheated many creditors and canceled many debts, and the law has frequently placed property beyond the reach of creditors. We do not believe that a dead man can commit a fraud even when aided in the change of an interest in property by the operation of law. The change in the interest came only after death. As long as life remained in Ingalls the status of the parties and the property remained unchanged. When the breath of life departed the change occurred. The same moment that made respondent a widow vested in her the right to the benefits under the insurance policies. The community of husband and wife was then dissolved.

"Fraud is either actual or constructive." (Sec. 1571, Civ. Code.) Actual fraud consists of *acts* committed by a party. (Sec. 1572, Civ. Code.) Constructive fraud is a *breach of duty* by a party or an *act* or *omission* which the law specially declares to be fraudulent. (Sec. 1573, Civ. Code.) As we have seen, the code sections relating to fraudulent instruments relate to *transfers* of property. Actual fraud and fraudulent transfers imply an act on the part of one committing the fraud. Implied fraud arises from an act or omission or a breach of duty. We find nothing in the record to show an act or omission on the part of any party to the contracts of insurance, either during the insolvency of the insured or in contemplation of such insolvency that would

bring the case within the code provisions. The policies were issued and the premiums paid prior to the insolvency of deceased. The best faith on the part of the insured, the insurance companies and the beneficiary appears in the issuance of the policies and the payment of the premiums and with everything connected with the insurance up to the time of the death of the insured. There was no change in the relation of the parties and no act or omission upon which to predicate fraud up to the moment that life departed from the body of the insured. A dead man cannot act. Here the law acted for him. What omission or breach of duty can be charged to deceased? The failure to live and pay his debts is the one suggesting itself. Death generally comes unasked and unsought. It is an involuntary happening that most people desire to avoid as long as possible. An act implies a will to perform. An omission indicates a failure to do an act. Both imply a will to do or not to do something that should or should not be done. The involuntary fact of death is not an act by which one can commit a fraud, nor is it an omission to perform a duty from which constructive fraud may be inferred. The "transfer" of property in this case was consummated not by an act or omission on the part of deceased, but by his death and the "act" of the law itself.

We find the reasoning used by the court of appeals of Colorado in the case of *Hendrie & Bolthoff Mfg. Co.* v. *Platt*, 13 Colo. App. 15 [56 Pac. 209], particularly applicable to the case before us. The court said:

"Besides, the contract is based upon and its fruits finally realized, if at all, because of the insurable interest of the beneficiary in the life of the assured. The latter is equally as essential, and is equally an important consideration of the contract. Upon what principle or theory, then, can it be said that rights based upon this insurable interest, which is an interest or right purely personal to the beneficiary, can inure to the benefit of the creditors of the assured? Can they say to the wife: 'Though it is true that this fund was realized upon your insurable interest in the life of your husband, not upon his interest in his own life, nor upon our interest in it as creditors, yet, because he paid the cash premiums required while insolvent, we should subject to the payment of our debts, not only so much of the fund as equals the amount of premiums so paid, which is all he took

from his estate, and all of which he deprived us, but we will take the whole fund. We will take back that which he took from us, and also that which could not have been secured without your insurable interest in his life.' The questions, in our opinion, suggest their own answer.

"Again, the fund, which is the property against which the creditors seek to enforce their claims, has not come into existence, has not become property till after the death of the debtor. How, then, can it be said that he made a voluntary or fraudulent conveyance of that which did not exist during his life? If a creditor's rights would attach to any portion of the proceeds of the insurance, would it not be more reasonable to say that in such case the right of recovery would be limited to the amount of funds so diverted, which in this instance would be the aggregate amount of premiums paid by the insolvent debtor? This would be what he gave to or voluntarily expended for the benefit of his wife. The fund realized by her was not from the payment of the premiums only, but from and by reason of, in addition thereto, her insurable interest in his life, which he neither gave nor conveyed to her, and in which he had no interest. In this state a married woman has a right to acquire, hold, manage, and convey her own separate property, free from any claim of her husband or of his creditors. Suppose that an insolvent husband should give to his wife $1,000, and that such a gift was under such circumstances as to make it manifestly fraudulent against his creditors; and suppose that his wife, by prudent management of the money, and by successful speculation, should, in course of time, acquire property of the value of $5,000. Could it be successfully contended that the husband's creditors could enforce their claims against this property to the full extent of its value? Obviously not. Certainly, in the absence of actual fraud upon the part of the wife, their right would be limited to the amount of the original money gift, with interest. This was what he gave in fraud of the creditors; this, what he took from them. It became none the less her absolute property because she might afterwards be compelled to repay it; and upon no principle of either law or justice could she be required to answer to her husband's creditors for its accretions while it was her property. All which the creditors could have demanded from the debtor was the amount

of the gift had he retained it, and certainly this was all which they could demand from the donee or grantee. Upon precisely the same principle it would seem clear that the proceeds of life insurance effected in favor of an insolvent debtor's wife could be chargeable, if at all, with his debts only to the extent that he, while insolvent, had used the funds of his estate to secure and carry the insurance."

The following cases from other jurisdictions tend to support the position of respondent: *Tyler* v. *Treasurer*, 226 Mass. 306 [L. R. A. 1917D, 633, 115 N. E. 300]; *Pullis* v. *Robison*, 73 Mo. 201 [39 Am. Rep. 497]; *Sternberg* v. *Levy*, 159 Mo. 617 [53 L. R. A. 438, 60 S. W. 1114]; *Harriman Nat. Bank* v. *Huiet*, 249 Fed. 856; *Bailey* v. *Wood*, 202 Mass. 549 [25 L. R. A. (N. S.) 722, 89 N. E. 147]; *Shaver* v. *Shaver*, 35 App. Div. 1 [54 N. Y. Supp. 464]; *Pence* v. *Makepeace*, 65 Ind. 345; *Stigler* v. *Stigler*, 77 Va. 163; *Pinneo* v. *Goodspeed*, 120 Ill. 524 [12 N. E. 196]; *Chapin* v. *Fellowes*, 36 Conn. 132 [4 Am. Rep. 49]. Citation of further authorities might be greatly extended but no good could come of it. A contrary rule has been adopted in but few states.

Appellants further contend that under the provisions of subdivision 18 of section 690 of the Code of Civil Procedure, it is their right to have applied to their claims the benefits of all insurance policies on the life of deceased whose annual premium payments were in excess of $500. They admit that respondent is entitled to receive and retain the benefits purchased by an annual premium up to that amount. In support of this argument they cite the cases of *Hall* v. *Hess*, 97 Misc. Rep. 331 [161 N. Y. Supp. 418]; *Stone* v. *Knickerbocker Life Ins. Co.*, 52 Ala. 589; *Fearn* v. *Ward*, 80 Ala. 555 [2 South. 114]; *Kimball* v. *Cunningham Hardware Co.*, 197 Ala. 631 [73 South. 323]; *Red River Nat. Bank* v. *DeBerry*, 47 Tex. Civ. App. 96 [105 S. W. 998]; and *Holmes* v. *Marshall*, 145 Cal. 777 [104 Am. St. Rep. 86, 2 Ann. Cas. 88, 69 L. R. A. 67, 79 Pac. 534]. The cases from New York, Alabama and Texas turned upon the particular provisions of the debtor's exemption laws of those states. On account of the marked difference between these laws and the provisions of our code they do not furnish authority for a like holding here.

In the case of *Holmes* v. *Marshall, supra*, the following facts appear: J. F. Jenkins died intestate leaving Annie J.

Jenkins as his surviving widow. He had three policies of insurance on his life, one payable to his estate in the sum of $982.50, and the others in the total sum of $1484 payable to his widow. The money was paid to the respective beneficiaries, and after deducting the expenses and costs of administration, the balance, which was paid to the estate, was set aside to the widow as exempt property. The widow placed these moneys in her bank account where they were attached by Holmes. The attachment was dissolved and an appeal taken. The Supreme Court sustained the order dissolving the attachment, holding that the money was exempt from all executions. The question which confronts us was not involved in this case and was not considered or decided by the court.

We are brought to the consideration of the question of whether or not insurance benefits payable to the widow, in excess of the amount that could be purchased with an annual premium of $500 can be subjected to the debts of her deceased husband. In considering this phase of the case we are faced with the fact that the expectancy of the wife in the insurance did not vest and become an interest until the moment she became a widow, at which time the community was broken. The only value taken from the property of the husband in acquiring the insurance was the premiums paid. The benefits paid to the widow were the results of the payments of these premiums and her insurable interest in her husband.

 Statutes exempting property from the levy of an execution are enacted by the legislature on grounds of public policy for the purpose of providing for a debtor and the members of his family (*Estate of Millington,* 63 Cal. App. 498 [218 Pac. 1022]), and it is the policy of the law to construe the exemption statute liberally (*Crown Laundry Co.* v. *Cameron,* 39 Cal. App. 617 [179 Pac. 525], so as to carry out the intention of the legislature. (12 Cal. Jur. 332.)

If this action were based upon debts of the wife, the answer to the question would be simple. If the insurance policies had matured and the benefits had been paid to the husband, and the action was against him upon his debt during his lifetime, our course would be clear. But the debt is that of the husband, and the action is against the wife after his death. Section 690 of the Code of Civil Procedure

is a part of chapter one of title nine of this code. This title is headed "Execution of Judgment in Civil Actions." Section 690 is headed "What Exempt from Execution." The preceding sections of the chapter relate to the levy of the execution by the judgment creditor upon the property of the judgment debtor. From the context of the chapter it would seem to us that the provisions of section 690 were intended by the legislature to relate to exemptions from execution against the judgment debtor and not a stranger to the indebtedness. With this conclusion reached, we are of the opinion that the limitations on the amount of insurance exempt, contained in subdivision 18 of section 690 of the Code of Civil Procedure, would only apply in an action by the creditor against his judgment debtor who has received insurance moneys in excess of an amount purchased by an annual premium of $500. The limitation does not apply in an action of a creditor of the husband on the husband's debt against a stranger to the indebtedness who happens to have been the beneficiary in insurance policies and to have received the money thereon. Had any of the premiums been paid by the insured during his insolvency, many cases uphold the right of the creditor to recover such premiums. However, this question is not involved in this case in view of the waiver of appellants contained in the findings, and the findings as to the solvency of the insured when the premiums were paid.

Judgment affirmed.

Barnard, J., and Warmer, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 7, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 18, 1930.